# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CA No. 3:18-CV-00532

| | | |
|---|---|---|
| SHAKEERA MYERS, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| LOOMIS ARMORED US, LLC, | ) ) | |
| *Defendant.* | ) ) | |

Plaintiff Shakeera Myers, by and through counsel, on behalf of herself and all others similarly situated (collectively "Plaintiffs"), hereby sets forth this collective and class action against Defendant Loomis Armored US, LLC (hereinafter "Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises out of Defendant's systemic, company-wide willful failure to compensate Plaintiffs for all hours worked, and for overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*, and out of sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et. seq.*

2. Plaintiff is a former armed guard driver and armed messenger for Loomis, compensated on an hourly basis. Throughout the relevant period, Defendant maintained a

1

corporate policy of failing to compensate armed guard drivers and armed messengers for overtime for hours worked. Plaintiff and other similarly situated employees were only paid "straight time" for all hours worked on weekdays, even when their hours worked on weekdays were in excess of forty (40) hours per week. For hours in excess of forty (40) hours per week worked on weekends, Plaintiff Myers was at times paid one and one-half (1.5) times her regular rate, and at times was paid only one-half (0.5) times her regular rate.

3. Defendant, through its managers, was aware that Plaintiff and other armed guard drivers and armed messengers were working in excess of forty (40) hours per week. Defendant suffered or permitted, and in fact, required Plaintiffs to work hours in excess of forty (40) hours per week without being compensated for time and a half (1.5) for their overtime work.

4. Defendant's practice of failing to compensate Plaintiffs at the appropriate minimum and overtime rate(s) for all hours worked violated Plaintiffs' rights under the FLSA and NCWHA.

5. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed by Defendant in North Carolina as armed guard drivers or armed messengers, or in similar positions, at any time within the three (3) years prior to the date of commencement of this action, through the present, and who were not compensated at the appropriate one and one-half of their regular hourly rate for all hours worked in excess of forty (40) per week.

6. Defendant is liable for its failure to pay Plaintiffs for all work performed, and

2

at the appropriate overtime rate for hours worked in excess of forty (40) per week.

7.     Plaintiffs who elect to participate in this FLSA collective action seek compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

8.     Plaintiff Shakeera Myers also brings this action, on her own behalf, and as a representative of similarly situated current, former or future armed guard drivers or armed messengers, or similar positions, employed by Defendant in North Carolina, under the NCWHA.  Plaintiff Myers, who is a North Carolina resident and who worked for Defendant in North Carolina, asserts that she and the putative class, who work or worked in North Carolina for Defendants, are entitled to compensation for all work performed for Defendants whether the work week totaled greater or fewer than forty (40) hours, compensation at the appropriate regular or promised rate for hours worked less than 40 per week  and/or overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

9.     Additionally, throughout the relevant period, Defendant maintained a corporate policy of deducting the costs of bulletproof vests and firearms from employees' wages, without obtaining the employees' prior written authorization as required by N.C. Gen. Stat. § 95-25.8.

10.     Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil

Procedure for the following class of Defendant's employees in North Carolina:

> All individuals who were, are, or will be employed by Defendant in North Carolina as armed guard drivers or armed messengers, or in similar positions, at any time within the two (2) years prior to the date of commencement of this action through the present , and who were not paid all of their wages on their regular pay date, and/or from whose wages Defendant deducted amounts for bulletproof vests or firearms.

11.     Plaintiff Myers, who is a North Carolina resident and who worked for Defendant in North Carolina, asserts that she and the putative class, who work or worked in North Carolina for Defendant, are entitled to compensation for any earned and accrued unpaid wages for hours worked at the appropriate straight, promised, or overtime rates for hours worked at either less than or in excess of forty (40) per week and/or any illegal deductions from taken from their wages, and to an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.8, 95-25.6, 95-25.22(a), (a1), and (d).

12.     Defendant's compensation system has been the subject of numerous FLSA collective action lawsuits, including *Hartfield v. Loomis Armored US, LLC*, No. 2:10-CV-07500 (C.D. Cal. 2011); *Colon v. Loomis Armored US, LLC*, No. 1:16-CV-07350 (S.D.N.Y. 2016); *Gomez et. al. v. Loomis Armored US, LLC*, No. 5:16-CV-931 (W.D. Tex. 2016); and *Hawkins et. al. v. Loomis Armored US, LLC*, No. 4:18-CV-47 (E.D. Ark. 2018). Plaintiffs in those actions challenged Defendant's failure to pay their overtime wages.

13.     *Hartfield v. Loomis Armored US, LLC*, was settled prior to the filing of a motion for conditional certification of a collective action, and a motion for settlement is

4

currently pending in *Colon v. Loomis Armored US, LLC*, in which the Court certified the matter as a nationwide FLSA collective action.

14.     Plaintiff Myers also brings this action, on her own behalf, for sex discrimination in the form of a hostile work environment.

## JURISDICTION AND VENUE

15.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*., and under Title VII, 42 U.S.C. § 2000e, *et. seq*.

16.     Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA, because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

17.     The United States District Court for the Western District of North Carolina has personal jurisdiction because Defendant's primary place of business in North Carolina is in Mecklenburg County, which is located within this District.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conduct business and can be found within the Western District of North Carolina.

19.     All of the alleged causes of action can be determined in this judicial proceeding and this will provide judicial economy, fairness, and convenience to the parties.

5

## PARTIES

20.    Plaintiff Myers is an adult resident of North Carolina, currently living in Knightdale.  She worked as an armed guard driver and as an armed messenger for Defendant at its Morrisville and Wilson, North Carolina, locations from approximately June 26, 2017, until April 10, 2018.  In approximately July or August of 2017, Plaintiff Myers also temporarily worked a route assigned to Defendant's Fayetteville, North Carolina, location.  Despite working at Defendant's multiple locations, Plaintiff Myers was paid in the same fashion.

21.    Defendant Loomis Armored US, LLC, is a Texas limited liability corporation, with its principal place of business located at 2500 City West Blvd, Suite 2300, Houston, Texas 77042-9000.  Defendant's primary business address in North Carolina is 3221 Stafford Drive, Charlotte, NC 28208.

22.    According to its website, Defendant is a cash management specialist, and is in the business of securely transporting cash and valuables in armored vehicles, typically to or from stores, banks, deposit boxes, and ATMs.  Defendant also provides cash management software; ATM replenishment, pickup, and maintenance services; and cash exchanges for businesses, among other services.

23.    According to its website, Defendant has nearly 200 locations nationwide, including six (6) in North Carolina.

24.    At all relevant times, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d) the NCWHA, N.C. Gen. Stat. § 95-25.2(5), and Title VII, 42

6

U.S.C. § 2000e(b).

25.     At all relevant times, Defendant operated as an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

26.     At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

27.     At all relevant times, Defendant has had gross operating revenues in excess of $500,000, consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

## ALLEGATIONS COMMON TO ALL COUNTS

28.     According to its website, Defendant employs more than 9,000 employees in nearly 200 locations around the United States. Six of these locations and hundreds of employees are located in North Carolina.

29.     Defendant employs armed guard drivers and armed messengers, or similar positions, to drive armored vehicles, transport cash and other valuables, and service ATMs, among other responsibilities.  Each of Defendant's vehicles typically contains two employees, a driver and a messenger.  The messenger's responsibility is to exit the vehicle at each scheduled stop, including businesses, banks, and ATMs, to perform cash exchange services.

30.     Plaintiff Myers worked for Defendant as an armed guard driver and armed messenger, or in similar positions, during the relevant period.  Plaintiff Myers was an hourly non-exempt employee, and her final wage rate was $12.75 per hour.

7

## FLSA COLLECTIVE ACTION ALLEGATIONS

31.    Defendant compensates armed guard drivers and armed messengers, or similar positions, on an hourly basis.  Defendant classifies these employees as non-exempt under the FLSA.

32.    Upon information and belief, Plaintiff Myers and other similarly situated employees drove vehicles weighing less than 10,000 pounds at certain times during their employment.

33.    Plaintiff Myers and other similarly situated employees are non-exempted by Section 13(b)(1) of the FLSA and not within the authority of the Secretary of Transportation because their job duties are, in part, under the "Small Vehicle Exemption" to Section 13(b)(1).

34.    The SAFTEA-LU Technical Corrections Act of 2008 ("Technical Corrections Act"), Pub. L. 110-244 § 306, 122 Stat. 1572, 1620 (2008) provides that FLSA overtime requirements apply to all "covered employees," defined in part as all employees who perform duties on vehicles weighing 10,000 pounds or less.

35.    Plaintiff Myers and other similarly situated employees are covered employees under the overtime provisions of Section 7(a) of the FLSA, and they are entitled to be paid at a rate not less than one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) in a work week.

36.    During the relevant period, Defendant maintained a company policy of paying employees at their regular hourly rate for any hours worked over forty (40) hours

8

per work week if those hours were worked during the regular work week, Monday through Friday.

37. During the relevant period, Defendant maintained a company policy of paying employees one-half (0.5) their regular hourly rate for all hours worked on Saturdays and Sundays, including hours worked in excess of forty (40) per week.

38. Plaintiff Myers began her employment for Defendant in training during June and July of 2017. During this time, she consistently worked in excess of forty (40) hours per week, typically a minimum of fifty-five (55) hours per week.

39. Plaintiff Myers was paid at her regular hourly rate or straight-time rate for all hours over forty (40) in a week that she worked on Monday through Friday, and at either one and one-half (1.5) or at one-half (0.5) of her regular hourly or straight-time rate for all hours she worked on Saturdays, even when those hours were also in excess of forty (40) per week. Thus, Plaintiff Myers was neither paid her straight-time rate or one and one-half (1.5) for hours over 40.

40. Defendants' failure to compensate employees at one and one-half (1.5) times their hourly rate for all work performed in excess of forty (40) hours per week has affected all Plaintiffs similarly.

41. Plaintiff brings the First Cause of Action of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

42. Members of the FLSA class are similarly situated.

9

43.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

44.     There are numerous (in excess of 1000, upon information and belief) similarly situated current and former employees in North Carolina that fall within the scope of the aforementioned FLSA class.

45.     These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

46.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

47.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

48.     Plaintiff Myers consents in writing to assert her claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).  Plaintiff Myers's signed consent form is filed with the Court as Exhibit A to this Complaint.  As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

49.     Plaintiff Myers requests that she be permitted to serve as the representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

10

## RULE 23 NCWHA CLASS ACTION ALLEGATIONS

50.     Defendant maintains a corporate policy of failing to pay all earned, promised and accrued wages on Plaintiff and putative class members' regular pay date and making unlawful deductions from employees' paychecks to cover the costs of firearms and bulletproof vests to be used while on the job, without receiving proper advance written authorization as required by the NCWHA, N.C. Gen. Stat. §§ 95-25.1, et. seq.

51.     Defendant promised armed guard drivers and armed messengers a rate of one and one-half (1.5) times their regular rate for weekend work, but failed to consistently pay such a rate and, in fact, at times paid only one-half (0.5) the regular rate for weekend work. Thus, Defendant has failed to pay promised regular and overtime wages.

52.     Defendant requires armed guard drivers and armed messengers to carry a weapon while on the job.

53.     Defendant strongly encourages armed guard drivers and armed messengers to wear bulletproof vests while on the job.  While employees are not required to obtain a bulletproof vest, Defendant's liability for injuries to employees who do not wear a vest is capped at $25,000.  Employees who do wear a vest are completely covered for injuries incurred while on the job.  This information is communicated to employees in an effort to convince them to purchase bulletproof vests.

54.     Plaintiff Myers ordered a bulletproof vest through a process established by Defendant at the beginning of her employment with Defendant, wore the vest during her employment, and was required to return it following her resignation.

11

55. Defendant deducted wages from Plaintiff Myers's pay for the cost of her bulletproof vest without receiving proper written authorization to do so.

56. Plaintiff Myers brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all similarly situated employees, for relief to redress and remedy Defendants' violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*.

57. <u>Numerosity</u>: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff Myers at this time, upon information and belief, the class comprises at least 1000 individuals.

58. <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

      a. Whether Defendant provided any advance written notice of its intent to make wage deductions for the cost of firearms and bulletproof vests in the manner required by the NCWHA;

      b. If Defendant did provide employees with any form of written notice of its intent to make wage deductions, whether the content of that notice complied

12

with the technical requirements of the NCWHA;

    c.  Whether Defendant failed to compensate putative NC Class Members at the earned, accrued, and/or promised rate for all hours worked, up to forty (40) hours per week;

    d.  Whether Defendant failed to compensate putative NC Class Members at the earned, accrued, and/or promised rate for all hours worked, in excess of forty (40) each week; and

    e.  Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited, straight-time and overtime on their regular pay date, in violation of the NCWHA.

59.  <u>Typicality</u>: The claims of Plaintiff Myers are typical of the claims which could be alleged by any member of the putative North Carolina class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendants, as alleged herein, of failing to pay employees for all hours worked, either at the appropriate straight or promised rates for hours less than forty (40) per week or the appropriate overtime rate for hours worked in excess of forty (40) per week, and/or for Defendant's deduction policy, of failing to provide proper notice of intended deductions from employees' pay pursuant to N.C. Gen. Stat. § 95-25.8. Defendant's deduction policies and practices affected all putative NC class members similarly, and Defendant

13

benefited from the same type of unfair and/or unlawful acts as to each putative NC class member. Plaintiff and members of the proposed NC class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

60. <u>Adequacy of Representation</u>: Plaintiff Myers is able to fairly and adequately protect the interests of all members of the proposed NC class, and there are no known conflicts of interest between Plaintiff Myers and members of the proposed class. Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

61. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would

14

create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

62. <u>Public Policy Considerations</u>: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

63. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiff and members of the proposed class.

**<u>SEXUAL HARASSMENT ALLEGATIONS ON BEHALF OF PLAINTIFF MYERS</u>**

64. Beginning in August 2017 and throughout the remainder of Plaintiff Myers's employment, other employees made the following daily comments:

- "I like it when you bend over"

- "Come in front of me when you are at the ATM"

- "You got a fat ass and that's why they keep you working with the men"

15

- "Where are you going tonight?"

- "Where is your man? Why don't you have a man?"

- "You look good bent over"

- "Your pants look real tight"

- "You don't know what southern love is like until you have a man do you right"

65.    During that period, other employees repeatedly ask Plaintiff Myers to go to the ATM in front of them because she had "nice" buttocks, dropped coins and ask Plaintiff Myers to pick them up, and threw bags of cash to be loaded into her vehicle onto the ground for her to pick up.

66.    Other employees repeatedly conducted discussions within Plaintiff Myers's hearing about sex acts she had allegedly performed on them, though Plaintiff Myers was not involved sexually with any co-workers. Several of these conversations occurred approximately five (5) feet away from Plaintiff Myers, or in the back of a truck while she sat in the front seat.

67.    In August 2017, Plaintiff Myers was assigned to work with a route partner who made comments such as "woman don't belong in this job," "women can't do what men do" and "they [women] are too slow."

68.    One of the two operations managers for the Morrisville location, Brian Seymour, who supervised Plaintiff Myers's work and set route schedules, regularly commented on her work, in particular, that because she is a woman, she was unable to do

16

the job and needed to go somewhere else. Mr. Seymour also told Plaintiff Myers that, because of her gender, "if what they did bothered her then she needed to go somewhere else" and that "no one wanted her there."

69. During that same period, Plaintiff Myers had a route partner who regularly became aggressive with her and would lose his temper. She informed her supervisor, Mr. Seymour, who responded "If you can't handle it, just quit."

70. Brian Seymour later changed Plaintiff Myers's route. Other employees learned of the situation, and workers constantly called her a "bitch" and on several occasions refused to check in the bags she had collected along her route when she returned to the branch location at the end of the day, forcing her to wait an additional 30-60 minutes before she could leave work.

71. At times and unbeknownst to Plaintiff Myers, other employees picked up Plaintiff Myers's cell phone when she left it unattended, added their own cell phone numbers to her contacts, and called themselves using her phone to ensure that they had her cell phone number. These employees asked her suggestive questions such as what she was doing that night or when she would be taking a shower.

72. Other employees circulated rumors that Plaintiff Myers was sexually involved with a route partner.

73. One of Plaintiff Myers's occasional route partners told her that she was his "work girlfriend" and complained that she was giving more attention to other guys. Plaintiff Myers repeatedly reminded him that they were not in a relationship, and he

17

responded by driving wildly to throw her about in the back of the truck.

74. Despite Plaintiff Myers' efforts to correct their sexually offensive behavior, she was stunned by the employees' repeated behavior and lack of empathy. She would walk away, ignore the comments, or respond that such comments were inappropriate and that they should treat her with respect.

75. In October 2017, Plaintiff Myers reported the sexual harassment to Defendant's Human Resources ("HR") Administrator, "Marti." While Marti advised Plaintiff Myers that she would initiate an investigation, including, but not limited to, speaking with the branch manager given Plaintiff Myers's complaint that her supervisor, Brian Seymore, participated in such sexual harassment and ignored her repeated complaints, upon information and belief, Defendant took no action and no investigation was ever initiated.

76. In early November 2017, Plaintiff Myers took two (2) days off from work because she was exhausted by the daily sexual harassment.

77. Later in November 2017, Plaintiff Myers called Defendant's Integrity hotline, a number provided for employees who were not getting needed help from managers or supervisors. Following this call, she was contacted by an HR representative from Defendant's Charlotte office, "Jennifer," about the harassment. Jennifer suggested to Plaintiff Myers that she look for another job because she was not cut out for "this type of work," and told Plaintiff Myers that she was unlikely to receive a transfer to another location. Upon information and belief, Defendant took no further action and no

18

investigation occurred.

78.     Due to the harassment, Plaintiff Myers requested a transfer to Defendant's Wilson location, which she received in December 2017.

79.     Once Plaintiff Myers transferred to Wilson, she continued to experience co-workers talking about her body and telling her to bend over.  Employees made comments such as:

- "Your body looks nice"

- "You're real tight"

- "I want you to bend over"

- "Get your ass on the truck so I can see you get inside the truck"

80.      One of Plaintiff's co-workers at the Wilson location told her, "I have a wife but I wouldn't mind if we get close."  She responded by telling him he was crossing a line, being disrespectful and not to approach her that way again.

81.     In the Wilson location, the frequency with which other employees had conversations in Plaintiff Myers's hearing falsely claiming to have had sex with her increased.

82.     Because her previous attempts to report the harassment had been ineffective, Plaintiff Myers did not attempt to report the harassment again.

83.     Due to the pervasiveness of sexual harassment Plaintiff Myers experienced, she resigned on April 10, 2018.

19

84. On or about September 21, 2018, Plaintiff Myers filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission.

85. Plaintiff Myers has not yet received notice of her right to sue for sexual harassment, but pleads this claim at this time to promote judicial efficiency by filing all her claims in a single complaint, as the statute of limitations will continue to run on her own and putative plaintiffs' wage-related claims until those claims are filed with the court. Plaintiff Myers will promptly supplement her complaint with a right to sue letter when it is issued.

## **FIRST CAUSE OF ACTION**
### **Violation of the Fair Labor Standards Act**
### **29 U.S.C. § 201, *et seq.***
### **Brought by Plaintiff Myers on Behalf of Herself and all Similarly Situated Employees**

86. Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

87. At all relevant times, Defendant has been, and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

88. At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Plaintiff Myers, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within

20

the meaning of the FLSA, 29 U.S.C. § 203.

89.     At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

90.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at the applicable minimum wage rate for all hours worked, and at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

91.     At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs at the overtime rate for all hours worked in excess of forty (40) hours per week.

92.     Defendant's failure to pay Plaintiffs at the appropriate overtime rate for hours worked in excess of forty (40) per week, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show that it acted in good faith, and a three (3) year, rather than two (2) year statute of limitations will apply, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

93.     As a result of Defendant's unlawful acts, Plaintiffs have been deprived of appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs,

21

pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.1, *et seq*.**
**Brought by Plaintiff Myers on Behalf of Herself and all Similarly Situated**
**Employees**

94.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

95.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiffs within the meaning of the NCWHA.

96.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

97.     Defendant employed Plaintiff Myers and similarly situated employees, within the State of North Carolina.

98.     At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for required work performed by Plaintiffs, and at the appropriate overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek.

99.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8, it is unlawful for an employer to withhold any portion of an employee's wages without the employee's advance written authorization, including the amount and reason for the deduction.  If the amount is not available when the employee signs the authorization, the employer must receive

22

advance written notice of the exact amount and of the right to withdraw the authorization.

100.    Defendants employed Plaintiff Myers, and similarly situated employees, within the State of North Carolina.

101.    At all relevant times, Defendant, pursuant to its policies and practices, deducted a portion of employees' wages for the cost of firearms and/or bulletproof vests without receiving the required advance written authorization and without providing advance written notice of the amount to be deducted.

102.    Consistent with the above, Defendant's wage withholding was in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.8.

103.    As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

104.    Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

105.    As a result of Defendant's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

# THIRD CAUSE OF ACTION
## Sex Discrimination and Hostile Work Environment
### 42 U.S.C. § 2000e *et seq.*
### Brought by Plaintiff Myers

106. Plaintiff Myers incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

107. Defendant is an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b), because it employs fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

108. Plaintiff Myers was repeatedly subjected to harassment and a hostile work environment in the form of unwelcome ridicule, abuse, humiliation, sexually suggestive and offensive comments, and beratement as a direct result of her sex.

109. Such discrimination and harassment was ongoing from August 2017 until Plaintiff Myers resigned on April 10, 2018.

110. Such discrimination and harassment was based on Plaintiff Myers's sex, a protected status. Plaintiff Myers's male co-workers were not treated in the same demeaning way that Plaintiff Myers was treated.

111. Such discrimination and harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff Myers's employment.

112. Such discrimination and harassment was unwelcome.

113. While Plaintiff informed her supervisors and Defendant's Human Resources department, they all failed to take any prompt corrective action upon hearing reports of

24

Plaintiff Myers's treatment; the supervisors, in fact, even participated in the harassment.

114.    As a direct and proximate result of Defendant's violation of Plaintiff Myers's rights under Title VII, as alleged herein, Plaintiff Myers has been injured and suffered damages, including lost income and benefits, loss of reputation, emotional distress and mental anguish, humiliation, inconvenience, and loss of enjoyment of life.  Accordingly, Plaintiff Myers is entitled to past pecuniary losses, interest, compensatory damages, and other relief provided for under Title VII.

115.    Plaintiff Myers is also entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 2000e-5(k).

116.    Additionally, since Defendant's violations of Title VII, as alleged herein, was intentional, willful, knowing and malicious, or with reckless indifference to Plaintiff Myers's federally protected rights, Plaintiff Myers is entitled to recover punitive damages from Defendant, pursuant to 42 U.S.C. § 1981a(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Myers, and all those similarly situated, collectively pray that this Honorable Court:

1.      Issue an Order certifying this action as a collective action under the FLSA, and designate Plaintiff Myers as the representative of all those similarly situated under the FLSA collective action;

2.      At the earliest possible time, issue notice of this collective action, or allow Plaintiff Myers to do so, to all persons who were, are, or will be employed by Defendants

in North Carolina as armed guard drivers or armed messengers, or in similar positions, at any time within the three (3) years prior to the date of commencement of this action through the date of judgment or final disposition in this action, and who did not receive all overtime compensation due for hours worked in excess of forty (40) per week. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

3.      Issue an Order certifying this action as a class action under the NCWHA, and designate Plaintiff Myers as a representative on behalf of all those similarly situated under the NCWHA class and designate the below signed counsel as class counsel;

4.      Award Plaintiffs actual damages for unpaid wages and liquidated damages equal in amount for the unpaid compensation found due to Plaintiff Myers and the class as provided by the FLSA, 29 U.S.C. § 216(b); award Plaintiffs actual damages for unlawfully withheld wages and liquidated damages equal in amount as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (a1);

5.      Award Plaintiffs attorneys' fees, costs, and interest pursuant to the FLSA, U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (d);

6.      Award Plaintiff Myers past pecuniary losses, interest, compensatory damages, and punitive damages, as a result of Defendant's violation of Title VII, pursuant to 42 U.S.C. § 1981a; and

7.      Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

26

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this October 1, 2018.

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Emma J. Smiley (NCSB No. 46407)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
esmiley@gildahernandezlaw.com

*Attorneys for Plaintiffs*

27