UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00532-FDW-DSC

SHAKEERA MYERS, on behalf of herself )
and all others similarly situated, )
)
Plaintiff, )
)
vs. ) ORDER
)
LOOMIS ARMORED US, LLC, )
)
Defendant. )
)

THIS MATTER is before the Court on Plaintiff's Motion for Conditional Certification Pursuant to the Fair Labor Standards Act, Court-Authorized Notice to be Issued under 29 U.S.C. § 216(B), Class Certification under Fed. R. Civ. P. 23, and Appointment of Class Counsel Under Fed. R. Civ. P. 23(G). (Doc. No. 26). Defendant responded to the motion, (Doc. No. 31), Plaintiff replied, (Doc. No. 33), and this motion is now ripe for review.

I. BACKGROUND

Plaintiff Shakeera Myers ("Myers") brings suit against Defendant Loomis Armored US, LLC ("Loomis") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95-25.8.[1] (Doc. No. 1). According to Myers' Complaint, Loomis is a cash management specialist business offering uniformed and armored guard services. (Doc. No. 1, p. 6). Myers and putative plaintiffs worked as Armored Service Technicians ("ASTs"), an all-encompassing title for guards, drivers, messengers, and/or similar positions. Id. at 6–7. As ASTs, they were responsible for

---

[1] Myers also brings a Title VII claim. See (Doc. No. 1, pp. 1, 24–25). However, that claim is not the subject of the present motion.

1

transporting cash and valuables in armored vehicles, in addition to replenishing ATM machines. Id. at 6. Myers and putative plaintiffs contend that Loomis maintained a company policy wherein ASTs were paid "straight time" for all hours worked on weekdays, even when their hours worked on weekdays were in excess of forty hours per week. (Doc. Nos. 1, p. 2; 27–4, p. 4; 27–5, p. 4; 27–6, p. 4; 27–7, p. 4; 27–8, p. 4; 27–9, p. 4). For hours worked in excess of forty hours per week worked on weekend, Myers and putative plaintiffs allege that they were at times paid only one-half times their regular rate. (Doc. Nos. 1, p. 2; 27–4, p. 4; 27–5, p. 4; 27–6, p. 4; 27–7, p. 4; 27–8, p. 4; 27–9, p. 4). Myers and putative plaintiffs aver that they can demonstrate that they "regularly performed a significant portion of their work, *i.e. entire shifts*, in vehicles weighing less than 10,000 pounds" such that the small vehicle exception overrides any exemptions to the overtime requirements under the FLSA. (Doc. No. 33, p. 6) (emphasis in original); see also (Doc. Nos. 27–4, p. 3; 27–5, p. 3; 27–6, p. 3; 27–7, p. 3; 27–8, p. 3; 27–9, p. 3). Finally, Myers and putative plaintiffs allege Loomis made deductions from their wages for equipment without proper written authorization and/or they have personal knowledge of other ASTs who have been victims of this policy. (Doc. Nos. 27–4, pp. 5–6; 27–5, pp. 4–5; 27–6, pp. 4–5; 27–7, pp. 4–5; 27–8, pp. 4–5; 27–9, pp. 4–5). Myers seeks (1) unpaid overtime compensation for hours worked in excess of forty hours per week pursuant to the FLSA; and (2) all earned, accrued, and unpaid (wages) promised straight-time, overtime, and unauthorized deductions pursuant to the NCWHA. See (Doc. No. 28, p. 9).

II. CONDITIONAL CERTIFICATION UNDER 29 U.S.C. § 216(b)

Myers seeks conditional certification and authorization to send court-supervised notice under the FLSA, 29 U.S.C. § 216(b), for the following class:

> [A]ll individuals who were, are, or will be employed by Defendant in North Carolina as armored service technicians, including armed drivers, armed

> messengers, and armed guards, or in similar positions at any time within the three (3) years prior to the filing of the Complaint, through the present, and who were not compensated at the appropriate one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week.

(Doc. No. 28, p. 9). Myers alleges that Loomis violated the FLSA by misclassifying Myers and other current and former Armored Service Technicians ("ASTs") as exempt, depriving them of overtime premium pay to which they are entitled under the FLSA. (Doc. No. 1, pp. 8–9). Myers argues that she and the alleged class members are similarly situated in that they were victims of a single decision, policy, practice, or plan that resulted in unpaid regular and overtime wages in violation of the FLSA. Id. at 9–10. Loomis objects, arguing that court-approved notice is not appropriate because Myers has not shown she is "similarly situated" to other ASTs employed at Loomis North Carolina branches. See (Doc. No. 31, p. 2).

The FLSA "embodies a federal legislative scheme to protect covered employees from prohibited employer conduct." Houston v. URS Corp., 591 F. Supp.2d 827, 831 (E.D. Va. 2008). Pursuant to section 216(b), "[a]n action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of [herself] or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "[U]nlike in a class action filed pursuant to Federal Rule of Civil Procedure 23 or a comparable state court rule, in a collective action under the FLSA, a named plaintiff represents only [herself] until a similarly-situated employee opts in as a 'party plaintiff' by giving 'his [or her] consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 758 (4th Cir. 2011) (quoting 29 U.S.C. § 216(b)). Under the FLSA, a district court may exercise its discretion and, in appropriate cases, certify an action as a "collective action" and facilitate notice

3

of the suit to a putative class of potential plaintiffs. Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989); Quinteros v. Sparkle Cleaning, Inc., 532 F.Supp.2d 762, 771 (D. Md. 2008).

Certification of a collective action is a two-stage process. Pelczynski v. Orange Lake Country Club, Inc., 284 F.R.D. 364, 367 (D.S.C. 2012). "First, a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" that they can "opt-in" to the collective action. Id. at 367–68. To proceed as a collective action at this stage, plaintiffs need only make "a modest factual showing" that they were victims of a common policy or practice that violated the FLSA. Essame v. SSC Laurel Operating Co., 847 F.Supp.2d 821, 825 (D. Md. 2012). At the notice stage, the court "does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Solais v. Vesuvio's II Pizza & Grill, Inc., No. 1:15-cv-227, 2016 WL 1057038, at *6 (M.D.N.C. Mar. 14, 2016) (citation omitted). A plaintiff may rely on "affidavits or other means," such as declarations and deposition testimony, to show that a class of "similarly situated" plaintiffs exist. Williams v. Long, 585 F.Supp.2d 679, 684–85 (D. Md. 2008) (concluding that declarations would alone suffice to meet the initial threshold for conditional certification a of collective action). This showing must consist of more than "vague allegations" with "meager factual support," but it need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists. Mancía v. Mayflower Textile Servs. Co., No. CCB–08–273, 2008 WL 4735344, at *2 (D. Md. Oct.14, 2008) (citing D'Anna v. M/A–COM, Inc., 903 F.Supp. 889, 893 (D. Md. 1995)).

Second, after the court has conditionally certified the class, potential class members have been identified and notified, and discovery has been completed, a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate

4

vehicle for relief. Pelczynski, 284 F.R.D. at 368 (citation omitted). At this "decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis. Steinberg v. TQ Logistics, Inc., No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *2 (D.S.C. Apr. 7, 2011).

Here, the parties disagree as to whether Myers need only make a "minimal" showing, based on pleadings, affidavits, and declarations, that the members of the putative collective action are similarly situated for the purposes of certification, or if something more is required at this initial stage. Loomis, citing Blaney v. Charlotte-Mecklenburg Hosp. Auth., No. 3:10-cv-592-FDW-DSC, 2011 WL 4351631 (W.D.N.C. Sept. 16, 2011)[2], argues that the Court should apply an "intermediate" approach, which requires a more stringent showing to determine whether Myers has demonstrated that she and the potential opt-ins are similarly situated. (Doc. No. 31, pp. 7–8). Myers, however, contends the lenient standard of review is appropriate. (Doc. No. 33, p. 6 n. 2).

In the instant case, the Court finds that the lenient standard is appropriate. First, although a couple courts in this circuit have applied the intermediate standard, see Blaney, 2011 WL 4351631, at *3; MacGregor v. Farmers Ins. Exch., No. 2:10-cv-03088, 2012 WL 2974679, at *3 (D.S.C. July 20, 2012), the majority of the courts in the Fourth Circuit adhere to the two-stage inquiry contemplated by § 216(b), see Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 299 (W.D.N.C. 2013) (citing cases from the Fourth Circuit where the two-stage analysis was used). Second, although the parties have completed some discovery in this case, including taking several depositions, it appears to the court that, at the time this motion was filed, significant additional discovery remains.[3] See Curtis v. Time Warner Entm't.-Advance Newhouse P'ship, No. 3:12-

---

[2] In Blaney, the court held that, in limited circumstances, when there is sufficient evidence in the record to make clear that certification is not appropriate, the court "can collapse the two stages of the analysis and deny certification outright." 2011 WL 4351631, at *3 (quoting Purdham v. Fairfax Cty. Pub. Sch., 629 F.Supp.2d 544, 547 (E.D. Va. 2009)).

[3] The Court notes that while the parties have exchanged documents and taken several depositions, several of the remaining opt-in plaintiffs have yet to be deposed. Moreover, discovery is not set to close until September 3, 2019.

CV-2370-JFA, 2013 WL 1874848, at *3 (D.S.C. May 3, 2013) (citing McKnight v. D. Houston, Inc., 756 F.Supp.2d 794, 802 (S.D. Tex. 2010)) (declining defendant's request to apply the intermediate standard even where parties completed some discovery). Where substantial discovery remains, courts typically apply the more lenient standard applicable at the first step. See McKnight. 756 F.Supp.2d at 802–03 (noting that the more onerous standard is only appropriate "after discovery is largely complete and the matter is ready for trial"). Accordingly, the Court will apply the widely accepted lenient standard to Myers' motion for conditional certification.

Here, the Court finds Myers has presented sufficient evidence to overcome the "fairly lenient" standard—that requires only "minimal evidence"—establishing that Myers and putative plaintiffs were similarly situated under 29 U.S.C. § 216(b). To support her contention that putative opt-in plaintiffs are similarly situated, Myers has presented six declarations that she and her putative class all (1) had similar duties as ASTs; (2) were hourly workers subject to the same timekeeping policies and practices; (3) were subject to a company-wide policy where ASTs were assigned to routes and were required to use vehicles of various sizes depending on what was available at the time; (4) were paid under a common policy implemented by Loomis; and (5) regularly worked more than fifty hours each week but were not compensated for weeks when they rode in small vehicles weighing less than 10,000 pounds. See (Doc. Nos. 28–4; 28–5; 28–6; 28–7; 28–8; 28–9). Myers also produced paystubs as evidence that Loomis failed to properly pay ASTs overtime compensation for all weeks. (Doc. No. 28–2). Finally, Myers provided Loomis' Fleet Inventory List that identifies both overweight and underweight vehicles used by ASTs in its North Carolina branches. (Doc. No. 28–16). Thus, the Court finds that the limited factual showing is sufficient to satisfy the lenient standard at this stage.

Loomis opposes conditional certification based on its intent to assert an affirmative defense under the motor carrier exemption. (Doc. No. 31, pp. 10–12). Specifically, Loomis contends that plaintiffs' claims and Loomis' potential defense will require highly individualized inquiries and thus the claims are inappropriate for class certification. Id. at 15. The Court, however, finds that this argument is premature and more appropriately considered during the second stage of the collective action certification when the evidentiary record and Loomis' defenses have been fully developed. See Holmes v. Charleston Ret. Inv'rs, LLC, 115 F.Supp.3d 653, 659 (D.S.C. 2014) (rejecting a similar argument made by the defendant). The fact that plaintiffs might be exempt from the FLSA due to the Motor Carrier Act ("MCA"), and that the application of the MCA exemption might require an individualized inquiry, does not preclude conditional certification. See Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 746–47 (E.D.N.C. 2017) ("[W]here defendants oppose conditional certification on the ground that some defenses may require a degree of individualized inquiry, defendants' opposition is unavailing."); see also Schilling v. Schmidt Baking Co., No. TDC-16-2498, 2018 WL 3520432, at *6 (D. Md. July 20, 2018) ("To the extent that individualized assessments may need to be made to determine whether there are weeks for which a particular DSM is not entitled to overtime pay, such findings do not justify denying conditional certification under the lenient standard."). The Court will, therefore, conditionally certify the class.

### III. RULE 23 CLASS CERTIFICATION

In addition to her FLSA claim, Myers has alleged a state-law claim, pursuant to the NCWHA, for which she seeks certification pursuant to Rule 23. Specifically, Myers seeks certification of her claim that Loomis (1) had a common policy of "failing to pay employees for all hours worked, either at the appropriate straight or promised rates for hours less than forty (40)

7

hours per week or the appropriate overtime rate for hours worked in excess of forty (40) per week" in violation of N.C. Gen. Stat. § 95–25.6, and (2) had a deduction policy of "failing to provide proper notice of intended deductions from employees' pay" in violation of N.C. Gen. Stat. § 95–25.8. (Doc. No. 1, pp. 12–13). For purposes of these claims, Myers proposes certification of the following class:

> [A]ll individuals who were, are, or will be employed by Defendant in North Carolina as armored service technicians, including armed drivers, armed messengers, and armed guards, or in similar positions at any time within the two (2) years prior to the date of commencement of this action through the present, and who were not compensated at the approximate one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week, and/or from those wages Defendant deducted amounts for bulletproof vests or firearms.

(Doc. No. 28, p. 9). Plaintiff seeks certification under Rule 23(b)(3), arguing that common questions of fact and law predominate over questions affecting only individual class members. In challenging the propriety of class certification, Loomis challenges the commonality and typicality requirements, as well as whether Myers can adequately represent the class members.[4] (Doc. No. 31, pp. 17–23). Loomis also contends that common questions of law or fact do not predominate over questions pertaining only to individual members of the class. Id. at 24–26.

Federal Rule of Civil Procedure 23 sets forth the requirements for certification of a class. The party seeking class certification bears the burden of proof, Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1267 (4th Cir. 1981), and must present evidence that the putative class complies with Rule 23, EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014). To maintain a class action, a plaintiff must first satisfy the requirements of Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. Fed. R. Civ. P. 23(a);

---

[4] The Court notes that Loomis has not challenged ascertainability or numerosity requirements.

Gunnells v. HealthPlan Servs., Inc., 348 F.3d 417, 423 (4th Cir. 2003). Once the plaintiff has met the requirements of Rule 23(a), she must show that class certification is proper under one of the subdivisions of Rule 23(b). Gunnells, 348 F.3d at 423. The district court does not examine the merits of the underlying claims when deciding a motion for class certification. Cerrato v. Durham Pub. Sch. Bd. of Educ., No. 1:16-cv-1431, 2017 WL 2983301, at *2 (M.D.N.C. Mar. 17, 2017) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974)). District courts have wide discretion in deciding whether to certify a class and should liberally construe Rule 23. Id. at 424.

A. Rule 23(a) Requirements

The typicality and commonality requirements of Rule 23(a)(2) and (3) often merge. Romero, 796 F.Supp. at 714. The commonality requirement requires a plaintiff to demonstrate that the class members all suffered the same injury, not that they merely suffered a violation of the same provision of law. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350–51 (2011). The class members' claims "must depend upon a common contention . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determinations of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350. The plaintiff's claim is typical if it arises from the same practice, event, or course of conduct that gives rise to the claims of other members. See Haywood v. Barnes, 109 F.R.D. 568, 578 (E.D.N.C. 1986). With regard to the commonality and typicality requirements, the Fourth Circuit has recognized that "only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998) (citing Mace v. Van Ru Credit Corp., 109 F.3d 338, 341 (7th Cir. 1997)). Nevertheless, the commonality and typicality requirements may be satisfied even if there are factual distinctions between the claims of the named

plaintiff and those of the other class members. See Broussard, 155 F.3d at 344 ("We . . . do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects.").

Here, the Court finds that the proposed class meets the commonality and typicality requirements of Rule 23(a). Myers has alleged and made a sufficient showing that Loomis' deduction practice for vests and firearms is commonly employed in violation of N.C. Gen. Stat. § 95–25.8.[5] Specifically, Myers has alleged and shown that Loomis, under its company-sponsored loan program, fails to (1) obtain any advance notice of its intent to make wage deductions and/or (2) provide notice that complies with the requirements of the NCWHA. Although there may be certain factual differences among the individual class members, the class members' claims and Myers' claims arise from the same course of conduct (Loomis' deduction policy), raise common questions of law and fact (whether ASTs were provided notice that satisfied the requirements of the NCWHA wage deduction provisions), and based on the same legal theories (violations of N.C.A.C. Tit. 13, Chpt. 12.0305(g) and § 95–25.8 of the NCWHA).

Similarly, the Court finds that Myers's section 95–25.6 claim[6] satisfies the commonality and typicality requirements. The Court finds that the common question of whether Loomis violated section 95–25.6 by not paying ASTs all earned, promised, and/or accrued wages, including overtime pay, predominates. Though potential class members' claims may not be identical in every respect, the Court is satisfied based on the showing before it that the claims arise from the same course of conduct and any recovery would be the result of the same legal theory.

---

[5] Pursuant to that statute, an employer may withhold any portion of an employee's wages in two situations: (1) when the employer is required or empowered to do so by state or federal law; or (2) when the employer has a written authorization from employees. Strickland v. MICA Info. Sys., 800 F.Supp. 1320 (M.D.N.C. 1992).

[6] N.C. Gen. Stat. § 95-25.6 provides that "[e]very employer shall pay every employee all wages . . . accruing to the employee on the regular payday."

Specifically, the class members' claims arise from the same conduct (Loomis' payment practices), raise common questions of law and fact (including, without limitation, whether ASTs were properly paid for all hours worked, specifically, any time in excess of a set number of hours per week), and are based on the same legal theory (violations of section 95–25.6) as those of Myers.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy-of-representation requirement consists of two components. First, the class counsel must be "qualified, experienced[,] and generally able to conduct the proposed litigation." Romero, 796 F.Supp.2d at 715 (citing Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)). Here, Loomis does not dispute that counsel for Myers have sufficient experience to represent a class, and the Court finds that Myers' counsel possess the necessary qualifications. Second, the proposed class representative must be a member of the class she purports to represent, and her interests must not be in conflict with those of the other class members. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997). The Court finds that there are no conflicts or antagonistic interests of Myers to the interests of any other AST. Myers has the same interests as all other ASTs: recovering the wages earned for all uncompensated work time and full reimbursement for allegedly illegal deductions taken from all affected ASTs' wages. See Romero, 796 F.Supp.2d at 715. Accordingly, the Court finds that Myers has met the requirement of adequacy of representation.

B. Rule 23(b) Requirements

Having found that the prerequisites of Rule 23(a) have been satisfied, the Court now turns to the next inquiry: whether Myers' action satisfies the requirements of 23(b)(3). To certify a class action under Rule 23(b)(3), "the court [must] find[ ] that the questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance" and "superiority" requirements "cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Anchem, 521 U.S. at 615 (ellipses in original) (internal quotation marks omitted). Rule 23(b)(3) specifically lists four factors pertinent to the court's determination regarding predominance and superiority.[7] Fed. R. Civ. P. 23(b)(3).

Here, the Court finds that the legal and factual issues common to the putative class predominate over any individual issues of law or fact. Indeed, nearly every declaration submitted by plaintiffs shows the same common fact issues—nonpayment of straight time, nonpayment of overtime for all weeks where putative class members worked in excess of forty hours per week, and/or a policy of unauthorized deductions for equipment. The Court further finds that common questions of law also predominate. These factual and legal issues can be effectively and uniformly adjudicated in the instant case, such that individual class members have little incentive to bring separate actions, and the Court is unaware of any currently pending separate litigation. Furthermore, there is no method superior to class treatment for bringing these claims.

In opposition, Loomis first contends that common questions do not predominate in the case at hand, arguing instead that there will be highly specific inquiries into whether an individual is entitled to payment for unpaid wages or were subject to unauthorized deductions, which defeats predominance. However, such individual questions go to damages and do not predominate over the common issues, such as whether the deduction policy employed by Loomis violated section

---

[7] Although Rule 23(b)(3) lists four factors pertinent to the preponderance and superiority findings, see Fed. R. Civ. P. 23(b)(3)(A)-(D), Loomis only addresses one—manageability, see (Doc. No. 31, pp. 24–26).

12

95–25.8. See Gunnells, 348 F.3d at 427–28 ("[R]ule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification."); see also Berber, 2018 WL 3869980, at *8 ("Individualized damages alone do not defeat predominance."). Moreover, Myers is not required to prove that every member of the putative class was harmed before a class can be certified. Berber, 2018 WL 3869980, at *9 (citation omitted) (noting that even if separate proceedings were needed to determine which class members were adversely affected, the issue of liability can still be determined by classwide proceedings). Finding that the requirements for Rule 23(a) and Rule 23(b)(3) are met, the Court will therefore grant Myers' motion for Rule 23 class certification at this time.

## IV. CONCLUSION

IT IS THEREFORE ORDERED:

1. Myers' motion for class and collective action certification is GRANTED on the terms set forth herein.

2. The case shall proceed with respect to the NCWHA claims as a class action under Federal Rules of Civil Procedure 23 and with respect to the FLSA claims as a collective action under 29 U.S.C. § 216(b).

3. For purposes of Myers' FLSA claim, the class is defined as follows:

> All current and former armored service technicians, including armed drivers, armed messengers, and armed guards, or in similar positions, who worked for Loomis Armored US, LLC in North Carolina at any time within the three (3) years prior to the date of commencement of this action through the present, and who were not compensated at the appropriate one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week.

4. For purposes of Myers' NCWHA claims, the class is defined as follows:

All current and former armored service technicians, including armed drivers, armed messengers, and armed guards, or in similar positions, who worked for Loomis Armored US, LLC in North Carolina at any time within the two (2) years prior to the date of commencement of this action through the present, and who were not compensated at the approximate one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week, and/or from those wages Defendant deducted amounts for bulletproof vests or firearms.

6. Pursuant to Fed. R. Civ. P. 23(g), Plaintiff's counsel shall serve as counsel for the class.

7. Defendant shall provide Named Plaintiff's counsel the last known names, mailing addresses, email addresses, and dates of employment of all putative collective members and Rule 23 class members who worked for Defendant at any time from October 1, 2015 to October 1, 2018 in native format within ten (10) days of this Order.

8. The Court DENIES WITHOUT PREJUDICE Myers' motion to authorize class notices. The Court DIRECTS the parties to confer and agree upon the content, form, and distribution of the notice (including appropriate forms), and jointly submit, within seven (7) days of this Order, proposed notice and forms for this Court's approval. In the event the parties are unable to agree, parties are DIRECTED to brief the outstanding issues to be submitted within ten (10) days from this Order. Supplemental briefings should be no longer than 1,500 words in length.

IT IS SO ORDERED.

Signed: July 24, 2019

_____
Frank D. Whitney
Chief United States District Judge