IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

SHAKEERA MYERS, on behalf of
herself and all others similarly situated,

    *Plaintiff,*

    v.

LOOMIS ARMORED US, LLC,

    *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)

CA No. 3:18-cv-00532-FDW-DSC

**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT; APPROVING OF PLAINTIFF'S NOTICE OF
SETTLEMENT AND APPROVING ANGEION GROUP AS THE
<u>SETTLEMENT ADMINISTRATOR</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 1

II.    FACTUAL & PROCEDURAL HISTORY ...................................... 1

    A.    The Nature of Plaintiff's Claims ................................... 1

    B.    Procedural History ......................................................... 2

    C.    Settlement Negotiations ................................................ 4

III.   SUMMARY OF SETTLEMENT TERMS ..................................... 5

    A.    Monetary Awards ......................................................... 6

    B.    Notice Provisions ......................................................... 10

    C.    Attorney's Fees & Litigation Costs ............................. 11

II.    PRELIMINARY APPROVAL ...................................................... 12

    A.    Preliminary Approval of the Settlement is Procedurally Fair. ................... 16

    B.    Preliminary Approval of the Settlement is Warranted Because the Settlement is Fair, Reasonable and Adequate. ........................... 17

        1.    Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1) ................... 19

        2.    The Reaction of the Classes Has Been Positive (Grinnell Factor 2) ........................... 20

        3.    Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3) ................... 20

        4.    Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5) ................... 22

        5.    Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6) ........................... 23

        6.    Defendant's Ability to Withstand a Greater Judgment is Not Determinative (Grinnell Factor 7) ................... 23

7. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9) ................................................................ 24

III.  THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE ........................................................................................ 25

IV.  ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARDS .......................................................................................................... 27

V.   THE PROPOSED FLSA SETTLEMENT IS FAIR AND REASONABLE ......... 27

VI.  CONCLUSION ......................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Atis v. Freedom Mortg. Corp.,*
  2018 WL 5801544 (D.N.J. Nov. 6, 2018) ............................................................10

*Beaulieu v. EQ Indus. Servs.,*
  2009 U.S. Dist. LEXIS 133023 (E.D.N.C. Apr. 20, 2009) ..................................26

*Brown v. Delhaize Am., LLC,*
  2015 U.S. Dist. LEXIS 184265 (M.D.N.C. July 20, 2015)........................... 22, 23

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ...................................................................... passim

*de la Cruz v. Chopra*
  Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213 (D. Md. May 21,
  2018) ....................................................................................................................12

*Domonoske v. Bank of Am., N.A.,*
  790 F. Supp. 2d 466 (W.D. Va. 2011) ................................................................21

*Duprey v. Scotts Co. LLC,*
  30 F. Supp. 3d 404 (D. Md. 2014)........................................................................21

*Encarnacion v. J.W. Lee, Inc.,*
  2015 WL 6437686 (S.D. Fla. Oct. 22, 2015) ........................................................9

*Flinn v. FMC Corp.,*
  528 F.2d 1169 (4th Cir. 1975) .............................................................................18

*Frank v. Eastman Kodak,*
  228 F.R.D. 174 (W.D.N.Y. 2005)............................................................. 16, 23, 24

*Gonqueh v. Leros Point To Point, Inc.,*
  2016 WL 791295 (S.D.N.Y. Feb. 26, 2016)........................................................10

*Hackett v. ADF Rest. Invs.,*
  2016 U.S. Dist. LEXIS 174775 (D. Md. Dec. 16, 2016)......................................12

*Hall v. Higher One Machs., Inc.*
  2016 U.S. Dist. LEXIS 131009 (E.D.N.C. Sep. 26, 2016) ..................................12

*Hood v. Uber Techs., Inc.,*
  2019 WL 93546 (M.D.N.C. Jan. 3, 2019) ..................................................... 11, 21

*Horton v. Merrill Lynch, Pierce, Fenner & Smith,*
  855 F. Supp. 825 (E.D.N.C. 1994) .......................................................15

*In re A.H. Robins Co.,*
  880 F.2d 709 (4th Cir. 1989) .............................................................24

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................... 23, 24

*In re Dollar Gen. Stores FLSA Litig.,*
  2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011)...................................17

*In re MI Windows & Doors Prods. Liab. Litig.,*
  2015 U.S. Dist. LEXIS 95889 (D.S.C. July 23, 2015).......................................22

*In re MicroStrategy, Inc. Sec. Litig.,*
  148 F. Supp. 2d 654 (E.D. Va. 2001) ......................................................... 14, 18

*In re The Mills Corp. Sec. Litig.,*
  265 F.R.D. 246 (E.D. Va. 2009).........................................................21

*In re Traffic Exec. Ass'n-E. Railrods,*
  627 F.2d 631 (2d Cir. 1980) ...........................................................16

*Jiffy Lube Sec. Litig.,*
  927 F.2d 155 (4th Cir. 1991) ...........................................................18

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.,*
  2018 WL 6718948 (M.D.N.C. Dec. 18, 2018)...................................................13

*Lomascolo v. Parsons Brinckerhoff, Inc.,*
  2009 U.S. Dist. LEXIS 89136 (E.D. Va. June 23, 2009) ....................................13

*Lynn's Food Stores, Inc. v. United States,*
  679 F.2d 1350 (11th Cir. 1982) ...........................................................12

*Matthews v. Cloud 10 Corp.*
  2015 U.S. Dist. LEXIS 114586 (W.D.N.C. Aug. 27, 2015) ......................... 17, 20

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ...............................................................24

*Pierre-Val v. Buccaneers Ltd. P'ship*
No. 814CV01182CEHEAJ, 2015 WL 12843848 (M.D. Fla. Dec. 7, 2015)..........9

*Reyes v. AT&T Mobility Servs.*,
*LLC*, 2013 WL 12219252 (S.D. Fla. June 21, 2013)............................................9

*Riddle v. City of Anderson*,
2015 U.S. Dist. LEXIS 192079 (D.S.C. Jan. 26, 2015) .............................. 21, 22

*Robinson v. Harrison Transp. Servs., Inc.*
2016 U.S. Dist. LEXIS 86294 (E.D.N.C. June 30, 2016) ...................................17

*S.C. Nat. Bank v. Stone*,
749 F. Supp. 1419 (D.S.C. 1990)........................................................... 14, 18, 19

*Salinas v. U.S. Xpress Enterprises, Inc.*
No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018).....................10

*Saman v. LBDP, Inc.*,
2013 U.S. Dist. LEXIS 83414 (D. Md. June 13, 2013)......................................17

*Smith v. Krispy Kreme Doughnut Corp.*,
2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ......................................................11

*Velasquez-Monterrosa  v. Mi Casita Restaurants*
No. 5:14-CV-448-BO (E.D.N.C. September 26, 2017) .......................................23

*Velazquez v. Burch Equip., LLC*,
2016 U.S. Dist. LEXIS 29426 (E.D.N.C. Mar. 8, 2016)....................................12

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................... 25, 26

**Treatises**

4 Newberg on Class Actions § 11.26.....................................................................16

Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)
..................................................................................................................14

Manual for Complex Litigation (Fourth) (2004) .............................................. 14, 15

Manual for Complex Litigation (Third) (1995) ............................................... 14, 15

## I.    INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216, the undersigned Counsel—on behalf of Named Plaintiff and the Proposed Settlement Classes—submit this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, Approval of Settlement Administrator, and Approval of Plaintiff's Notice of Settlement. The terms of the settlement are set forth in the Settlement Agreement attached as Exhibit A hereto and described in detail in Section II, *infra*. The settlement is the result of detailed, mediated, and arm's length settlement negotiations. It is both procedurally and substantively fair and in the best interests of the Rule 23 Class and the FLSA Class; therefore, this Court should grant Plaintiff's Motions.

## II.   FACTUAL & PROCEDURAL HISTORY

### A.    <u>The Nature of Plaintiff's Claims</u>

Plaintiff asserts that she and similarly situated individuals are former or current Armored Service Technicians ("ASTs"), or a similar position, employed by Defendant Loomis Armored US, LLC ("Defendant" or "Loomis").  Plaintiff asserts Loomis violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* by allegedly failing to pay its ASTs, including armed drivers, armed messengers, and armed guards, all wages owed, including overtime at a rate of one-and-one-half their regular rate of pay for work performed in excess of forty (40) hours per week.

Plaintiff also alleges violations of the North Carolina Wage and Hour Act ("NCWHA"). To support her NCWHA claim, Plaintiff alleges that Loomis allegedly maintained a corporate policy of deducting the costs of bulletproof vests and firearms from employees' wages, without obtaining the employees' prior written authorization as well as failing to pay employees all promised wages, including compensation at a rate of one-and-one-half their regular rate of pay for worked performed in excess of forty (40) hours per week.[1]

### B.    Procedural History

On October 1, 2018, Plaintiff Shakeera Myers filed this action on behalf of herself and other similarly situated ASTs who were or are employed by Defendant, seeking to recover unpaid overtime and minimum wages under the FLSA and unpaid wages under the North Carolina wage laws, and Trevon Conyers filed a Consent to File Suit as plaintiff the same day. Specifically, Plaintiff asserts that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*, by: (1) failing to compensate employees at the premium overtime rate of one-and-

---

[1] Consistent with the Settlement Agreement, Defendant does not oppose this motion. Plaintiff acknowledges, however, that Defendant denies any and all claims of wrongdoing, and does not assent to Plaintiff's characterization of the facts herein. While Defendant does not oppose this motion, and also desires that the Court approve the parties' settlement, the legal arguments made herein in support of the motion are Plaintiff's own.

one-half times their regular hourly rate for all hours over forty; (2) failing to pay Plaintiff and class and collective members all owed and/or earned wages; and (3) subjecting Plaintiff and class and collective members to unlawful deductions and/or withholdings. *See* Dkt. 1. On November 20, 2018, Defendant filed its Answer and Affirmative Defenses. Dkt. 10.

On February 4, 2019, Defendant provided its first responses to Plaintiff's interrogatories and request for production of documents. As a result of this production and the parties' disagreement over the scheduling of multiple depositions, the parties briefed discovery disputes for the Court and participated in a conference call with the Court on April 9, 2019. Following this call and an extensive amount of supplemental discovery productions by Defendant, Plaintiff deposed Defendant's Rule 30(b)(6) designee on May 16, 2019, and Defendant deposed Named Plaintiff Myers on May 20, 2019 and opt-in Plaintiff Conyers on May 22, 2019.

On May 23, 2019, Craig Abbott, Kenneth Brooks, Shamekia Butler, Charles Peppers, and Michael Smith each filed a Consent to File Suit as Plaintiff. Dkt. 24. On June 4, 2019, Marvin Blue and Richard Jackson filed a Consent to File Suit as Plaintiffs, and Named Plaintiff also filed her motion for both conditional and class certification pursuant to both the FLSA and Rule 23 of the Federal Rules of Civil Procedure. Dkt. 36; Dkt. 25. On May 30, 2019, pursuant to the Court's

instructions, Plaintiff filed an Amended Memorandum in Support of her Motion for Conditional and Class Certification to address the excess page limit. Dkt. 28. On June 13, 2019, Defendant filed its Memorandum in Opposition to Plaintiff's Motion for Conditional and Class Certification pursuant to the FLSA and Rule 23 of the Federal Rules of Civil Procedure. Dkt. 30. On June 20, 2019, Plaintiff filed her Reply Brief in Support of her Motion for Conditional and Class Certification. Dkt. 33. On July 25, 2019, the Court granted Plaintiff's motion for conditional and class certification, certifying the Rule 23 Class and conditionally certifying the FLSA collective, but denied without prejudice Plaintiff Myers's proposed notice to both the FLSA and Rule 23 classes. Dkt. 40.

The parties filed competing proposals regarding notice to the FLSA and Rule 23 classes. Dkts. 39, 38. On August 9, 2019, the Court granted Plaintiff's proposed notice with modifications, including, but not limited to, a thirty (30) day notice period for FLSA Plaintiffs to file Consents to File Suit as Plaintiffs and Rule 23 Class Members to opt-out of the lawsuit. As of November 4, 2019, approximately 217[2] FLSA Plaintiffs have filed Consents to File Suit, and approximately six (6) Rule 23 Class Members have filed opt-out forms. Dkt. 40. Notice was sent to all 727 identified class members on August 15, 2019. Dkt. 44.

### C. <u>Settlement Negotiations</u>

---

[2] Including Named Plaintiff

Beginning around mid-November 2018, the parties discussed early mediation in this matter. The parties were unable to come to an agreement regarding the scope of the classes and postponed mediation discussions until more discovery had been completed. In May 2019, the parties again revisited discussions of mediation, and on May 13, 2019, the parties filed a joint motion to stay litigation to pursue mediation. Dkt. 23. On May 23, 2019, the Court, by Text-Only Order, denied the parties' joint motion to stay. The parties planned to mediate the litigation near the close of discovery.

Following the Court's granting of Plaintiff's motion for conditional collective and class certification and the subsequent notice period, Plaintiff engaged in a damages' analysis using data produced by Defendant as part of the parties' discovery obligations. Defendant produced weekly pay records, start and end dates, and other compensation data for every Rule 23 Settlement Class Member and FLSA Collective Member, at that time. Plaintiffs and Defendant submitted a mediation statement to the mediator.

The Parties attended mediation on September 16, 2019, before mediator Hunter Hughes III, a nationally recognized class- and collective-action wage and hour mediator, at his offices in Atlanta, Georgia. The mediation and follow-up discussions thereto resulted in the Settlement Agreement attached hereto.

## III. SUMMARY OF SETTLEMENT TERMS

### A. __Monetary Awards__

The Settlement Agreement creates a non-reversionary, "all in" settlement fund consisting of a Maximum Gross Settlement Amount of $1,500,000.00 (the "Settlement Fund") which covers all awards to "Participating Rule 23 Settlement Class Members and Participating FLSA Collective Members" (as defined in the Settlement Agreement), service awards to named Plaintiff and the nine early opt-in plaintiffs, Trevon Conyers, Shamekia Butler, Michael Smith, Craig Abbott, Charles Peppers, Marvin Blue, Kenneth Brooks, Richard Jackson, and Berry Packer ("Early Opt-ins"), attorneys' fees, settlement administration fees, and litigation costs. *See* Exhibit A – Settlement Agreement, § IV. This Gross Settlement Amount of $1,500,000.00 is the gross amount that Defendant will pay pursuant to the Settlement Agreement, and each of the approximately 727 members of the class and collective will have the opportunity to participate in the settlement and receive a settlement payment. Under the terms of this agreement, unclaimed settlement funds shall not revert back to Defendant. In return, the Settlement Agreement provides for the dismissal with prejudice of this action, as well as a release of state and/or local law wage and hour claims of the Rule 23 class, as well as the FLSA claims of those in the FLSA collective who choose to participate in the proposed settlement by joining the litigation or submitting a settlement claim form.

The Settlement Agreement defines the classes of persons who are eligible to participate in the FLSA Class under this settlement as:

> All current and former armored service technicians, including armed drivers, armed messengers, and armed guards, or persons in similar positions who worked for Loomis Armored US, LLC, in North Carolina at any time from October 1, 2015 through **[DATE OF PRELIMINARY APPROVAL]**, and who were not compensated at the appropriate one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week.

All members of that collective will be invited to submit a claim form to obtain a share of the settlement, and those who submit a claim form to participate, and those who have already filed consents to join this litigation, will release their claims under the FLSA. Moreover, the Settlement Agreement defines the Rule 23 class as:

> all current and former armored service technicians, including armed drivers, armed messengers, and armed guards, or persons in similar positions, who worked for Loomis Armored US, LLC, in North Carolina at any time from October 1, 2016 through **[DATE OF PRELIMINARY APPROVAL]**, and who were not compensated at the appropriate one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week, and/or at any time

within two (2) years prior to the date of commencement of the Action

through the date of preliminary approval of the settlement, had amounts

deducted from those wages for bulletproof vests or firearms.

This proposed Rule 23 Settlement Class, recognizes the shorter two-year statute of

limitations applicable to the state law wage claims asserted pursuant to Rule 23. The

actual amount that each Participating Rule 23 Settlement Class Member and

Participating FLSA Collective Member will receive will be determined pursuant to

an allocation formula that reflects the relative value of their claims under Plaintiff's

theory of the case, taking into account the time and compensation records that have

been produced. Each Participating FLSA Collective Member and Participating Rule

23 Settlement Class Member who timely returns the claim form will be entitled to

receive a share of the Net Settlement Amount, proportionate to their estimated actual

damages as compared to the total estimated damages for the entire class.

Specifically, funds will be allocated on a pro rata basis. *See* Ex. A, Art. IV § 2.

The Settlement Agreement provides that Plaintiff receive a service award of

$20,000.00;[3] and the Early Opt-ins shall each receive a service award in recognition

of the time and commitment that they dedicated to bringing this action forward to

---

[3] The Settlement Agreement also provides for consideration of the release of Named Plaintiff's individual sexual harassment claims, Named Plaintiff shall receive $50,000.00.

advance the rights of absent class members.[4] The service awards are also consideration for execution by Plaintiff and the Early Opt-ins, respectively, of a general release of all claims against Defendant. As discussed in Plaintiff's motions for attorney's fees and service awards, these amounts are fair and reasonable and consistent with other settlements in this area of law. *See, e.g., Pierre-Val v. Buccaneers Ltd. P'ship*, No. 814CV01182CEHEAJ, 2015 WL 12843848, at *4 (M.D. Fla. Dec. 7, 2015); *Reyes v. AT&T Mobility Servs., LLC*, No. 10-20837-CV, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013); *Encarnacion v. J.W. Lee, Inc.*, No. 14-CIV-61927, 2015 WL 6437686, at *5 (S.D. Fla. Oct. 22, 2015).

The settlement will be administered by a neutral-third party settlement administrator. This motion requests that the Court appoint Angeion Group

---

[4] Depending on the timing of the Early Opt-ins joining the lawsuit and their respective participation, Early Opt-ins shall receive a service award proportionate to their level of participation. Specifically, opt-in Plaintiff Trevon Conyers will receive $12,500 for his service award as the first early opt-in plaintiff and due to his cooperation and participation in discovery, pre-certification deposition, and preparing a declaration for conditional certification; Early Opt-ins Craig Abbott, Michael Smith, Shamekia Butler, and Charles Peppers shall receive service awards in the amount of $5,000 for their early cooperation and participation in discovery, depositions, providing declarations, documents, and information in furtherance of mediation and certification; Early Opt-in Marvin Blue shall receive a service award in the amount of $4,000 his cooperation and participation in discovery and sitting for a deposition; Early Opt-in Kenneth Brooks shall receive a service award in the amount of $3,000 for his cooperation and participation in discovery and making himself available for a deposition; and Early Opt-ins Richard Jackson and Berry Packer shall receive service awards in the amount of $2,500 for their cooperation and participation in discovery.

("Angeion"), an entity specializing in administration of class action and wage settlements, as the settlement administrator for this action. The cost of administration is estimated to be $25,441.00, which will be paid out of the $1,500,000.00 Settlement Fund. Courts routinely approve Angeion as a settlement administrator in cases such as this. *See, e.g., Atis v. Freedom Mortg. Corp.,* No. CV 15-03424 (RBK/JS), 2018 WL 5801544, at *1 (D.N.J. Nov. 6, 2018) (appointing Angeion to administer a $4.4 million FLSA settlement involving both opt-in and opt-out class members pursuant to the FLSA and Rule 23 of the Federal Rules of Civil Procedure); *Gonqueh v. Leros Point To Point, Inc.*, No. 114CV5883GHWGWG, 2016 WL 791295, at *2 (S.D.N.Y. Feb. 26, 2016) (appointing Angeion to administer a settlement involving both opt in and opt-out class members pursuant to the FLSA and Rule 23 of the Federal Rules of Civil Procedure); *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 1:13-CV-245, 2018 WL 1475610, at *1 (E.D. Tenn. Mar. 26, 2018) (appointing Angeion to administer a $2.2 million FLSA settlement). Moreover, Angeion administered the initial processing and mailing of the notice of lawsuit following the Court's approval of class action notice. As such, Angeion is familiar with the claims at issue and data involved and is more than qualified to assist with the notice period regarding this settlement.

## B. Notice Provisions

The Settlement Agreement provides that following Court approval, the neutral, third-party settlement administrator shall notify class members and plaintiffs of the claims in this action. *See* Ex. A, Art. V. The settlement administrator will update addresses using the United States Post Office's National Change of Address database prior to mailing the notice to make sure that it has determined the proper address for all class members. *See* Ex. A, Art. V § 5. The settlement administrator will then issue the Proposed Notice by U.S. mail, attached hereto as Exhibit A-1, to all members of the Settlement Classes. The notice packets should minimize any risk of confusion. The concurrently filed proposed Order includes a comprehensive list of the duties and responsibilities of the settlement administrator.

### C. Attorney's Fees & Litigation Costs

The Settlement Agreement provides that Defendant shall not oppose any petition for attorneys' fees filed by Plaintiff's counsel up to one-third, *i.e.*, ($500,000.00) of the Gross Settlement Amount, plus reimbursement of reasonable litigation costs and expenses not to exceed $35,000.00. *See* Ex. A, Art. IV 4. Numerous courts in the Fourth Circuit have approved fee awards in that amount. *See, e.g.*, *Hood v. Uber Techs., Inc.,* 1:16-CV-998, 2019 WL 93546, at *6 (M.D.N.C. Jan. 3, 2019) (approving one-third of attorneys' fees)*; Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("In this jurisdiction, contingent fees of one-third (33.3%) are common."); *Hackett v. ADF*

*Rest. Invs.*, 2016 U.S. Dist. LEXIS 174775, at *14-17 (D. Md. Dec. 16, 2016) gross amount of the common settlement funds . . . plus . . . reimbursement of actual costs . . . . [T]hese amounts are fair and reasonable."). A separate motion for attorney's fees and costs has been filed contemporaneously, addressing fees and costs in greater detail.

## II.     PRELIMINARY APPROVAL

Plaintiff moves for preliminary approval of the settlement described above. As this settlement is both procedurally and substantively fair and adequate, the Court should grant Plaintiff's Motion.

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. Courts within the Fourth Circuit favor compromise and settlement of class action suits. *See de la Cruz v. Chopra*, Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213, at *3 (D. Md. May 21, 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) (stating FLSA settlement agreements should generally be accepted if it is fair and reasonable); *Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sep. 26, 2016) (providing, in a hybrid FLSA and NCWHA action, that there is a "strong judicial policy in favor of settlements, particularly in the class action context.") (citations omitted); *Velazquez v. Burch Equip., LLC*, 2016 U.S. Dist. LEXIS 29426, at *3 (E.D.N.C. Mar. 8, 2016) (same); *Lomascolo v. Parsons Brinckerhoff, Inc.*,

2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) ("Litigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits."); *Muhammad v. Nat'l City Mortg., Inc.*, 2008 U.S. Dist. LEXIS 103534, at *13 (S.D. W. Va. Dec. 19, 2008) ("A settlement compromising conflicting positions in class action litigation serves the public interest."). Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a proposed class action settlement if the court determines that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

Although district courts have broad discretion in approving the settlement of a class action case, there is a "strong presumption in favor of finding a settlement fair." *See Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *27; *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, No. 1:16-CV-01088, 2018 WL 6718948, at *2 (M.D.N.C. Dec. 18, 2018). "A settlement fairness hearing is not a trial, and the court should defer to the evaluation and judgment of experienced trial counsel in weighing the relative strengths and weaknesses of the parties' respective positions and their underlying interests in reaching a compromise." *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *11; *see also*, *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *13. "[T]he Court's function in assessing a proposed settlement is to determine whether, as a whole, it is fair, adequate and reasonable to [c]lass [m]embers." *S.C. Nat. Bank*

*v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Manual for Complex Litigation (Third) § 30.42 (1995); *see also* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002) ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval."); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001) (holding that, when counsel had extensive experience in the subject matter of the class action, it was "appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole, and to find that the proposed partial settlement is fair.") (quotation omitted).

As described by the Manual for Complex Litigation, judicial approval of a proposed class settlement is a two-part process. Manual for Complex Litigation (Fourth) § 13.14, at 173 & § 21.632, at 320-21 (2004). First, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing." *Id*. If the court finds the settlement is sufficient, *i.e.*, is within the range of possible judicial approval, it will schedule a formal fairness hearing and direct notice to the class. *Id.* at § 21.633, at 321-22. Second, once notice has been

disseminated to the class and the relevant evidence has been presented, the court makes the final determination as to whether the settlement is fair, reasonable, and adequate. *Id.* at § 21.634-635, at 322-23.

Plaintiff asks the Court to conduct the initial review of the settlement and find that it is within the range of fairness sufficient to justify a notice and fairness hearing. Preliminary approval of a settlement is not a decision about the merits of the settlement or the case itself. Rather, the Court's role is limited to determining whether the settlement agreement is sufficient to justify public notice and a hearing, at which time the class members and others may present arguments and evidence for or against the proposed agreement. Manuel for Complex Litigation (Third) § 30.41, 236-37 (1995) (noting that that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval, the court should permit notice of the settlement to be sent to class members. (internal marks omitted)); *see also Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).

Accordingly, in considering whether to grant preliminary approval, the Court is not required to probe extensively into the merits of the settlement or to make a final determination on the adequacy of the settlement. Both of these inquiries are reserved for the final stage of the class settlement approval process. Manual for Complex Litigation (Third) § 30.41, 236-37 (1995). Because preliminary approval

is a provisional step that merely begins the settlement approval process, any doubts are resolved in favor of preliminary approval. *See In re Traffic Exec. Ass'n-E. Railrods*, 627 F.2d 631, 634 (2d Cir. 1980) (preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness"). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (citations omitted). Because the settlement agreement reached in the instant case is both procedurally and substantively fair, the Court should grant Plaintiff's Motion.[5]

## A. <u>Preliminary Approval of the Settlement is Procedurally Fair.</u>

The purpose of the first stage, "preliminary approval," is to determine whether the settlement is within the "range of reasonableness." 4 Newberg on Class Actions § 11.26. A proposed settlement is procedurally fair when it is reached through vigorous, arms-length negotiations and after experienced counsel had evaluated the

---

[5] The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, because a FLSA settlement does not implicate the same due process concerns. *See McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, *6 (S.D.N.Y. 2010). Since Plaintiff seeks approval for settlement on behalf of the FLSA Class and Rule 23 Class, this brief addresses the Rule 23 standard. If the Court agrees that the Rule 23 standard is satisfied, then clearly the FLSA standard is satisfied as well.

merits of plaintiffs' claims. *See Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at *6 (E.D.N.C. June 30, 2016); *Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at *12 (D. Md. June 13, 2013); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011). Where negotiations are conducted at arms-length and in the presence of an experienced mediator, there is a presumption that the settlement meets the requirements of due process. *See Matthews v. Cloud 10 Corp.*, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015); *see also Robinson*, 2016 U.S. Dist. LEXIS 86294, at *6; *Saman*, 2013 U.S. Dist. LEXIS 83414, at *12; *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011).

Here the settlement was reached via arm's-length negotiations, conducted in the presence of counsel and with the assistance of an experienced, neutral third-party mediator. There is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. Moreover, as discussed below, the settlement reached is substantively fair to all parties concerned. There is thus no reason to think that preliminary approval should be denied on procedural fairness grounds.

**B.**   **Preliminary Approval of the Settlement is Warranted Because the Settlement is Fair, Reasonable and Adequate.**

The Fourth Circuit evaluates substantive fairness and adequacy considering the factors from the seminal case of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448

(2d Cir. 1974). *See DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *9-10; *Stone*, 749 F.

Supp. at 1423; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (citing

*Grinnell* with approval). The *Grinnell* factors are: (1) the complexity, expense and

likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the

stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of

maintaining the class action through trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund

in light of the best possible recovery; and (9) the range of reasonableness of the

settlement fund to possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.[6] Here, the balance of the *Grinnell* factors weigh in favor

---

[6] Alternatively, courts in this circuit have considered factors separately grouped under "fairness" (the posture of the case, the extent of discovery conducted, the circumstances surrounding the negotiations, and the experience of counsel) and "adequacy" (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strength of the defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement). *Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991); *see also In re MicroStrategy*, 148 F. Supp.2d at 665. Section II(A) on procedural fairness addressed the third and fourth factors under "fairness," while the first two factors correspond to *Grinnell* factor 3. With respect to adequacy, factors 1 & 2 are encompassed by *Grinnell* 4-6 and 8-9; factor 3 is the same as *Grinnell* 1; factor 5 is the same as *Grinnell* 2; and factor 4 is the same as *Grinnell* 7. Thus, while the discussion is organized to correspond to the *Grinnell* factors, all *Jiffy Lube* factors are encompassed by the discussion as well.

of preliminary approval.

1. *Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1)*

"Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *Stone*, 749 F. Supp. at 1423 (internal citations omitted); *see also Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *14 ("The complexity, expense, and duration of class action litigation are factors that support approval of a settlement.").

Though Plaintiff's counsel is confident in their legal position, a trial on the merits would still involve significant risks. Plaintiff would have to overcome Defendant's dispositive motion briefing, including motions for partial summary judgment as well as motions to decertify the FLSA collective and the Rule 23 class. Moreover, Plaintiff would still have to overcome Defendant's arguments that their system of payment complied with the FLSA and state law and that all ASTs were properly compensated in accordance with federal law and any potentially applicable overtime exemptions. Although Plaintiff believes she would survive motions for decertification and prevail on both liability and damages challenges, Plaintiff and her counsel are also realistic. Even if Plaintiff prevails, this victory could only be obtained after briefing, argument, and trial, all of which is of an uncertain duration,

and the process of trial and appellate litigation is always full of uncertainty. These considerations thus weigh very strongly in favor of preliminary approval.

### 2. *The Reaction of the Classes Has Been Positive (Grinnell Factor 2)*

Notice of the settlement and its details have not yet been issued to the classes. As such, the Court should more fully analyze this factor after notice issues and Rule 23 Class Members are given the opportunity to opt out or object. But, at this early stage in the settlement process, the Named Plaintiff and current Opt-in Plaintiffs have expressed approval of the settlement. More than 217 FLSA plaintiffs, or nearly 29% of the settlement class, have already "opted-in" to this litigation, suggesting that they are generally supportive of the way in which it has been managed by the Named Plaintiff and their counsel up to this point, and are interested in Class Counsel resolving the litigation on their behalf. *See* Dkt. Nos. 46, 47, 48, 49, 53, 56 (notices of filing consents to file suit by Opt-In Plaintiffs, authorizing Class Counsel to resolve the litigation on behalf of the opt-ins). Therefore, to the extent that it can be assessed this early in the settlement process, these factors weigh in favor of approval. *See Matthews*, 2015 U.S. Dist. 114586, at *4.

### 3. *Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)*

In evaluating a settlement, courts must consider "the stage of the proceedings, including the complexity, expense and likely duration of the litigation." *Duprey v.*

*Scotts Co. LLC*, 30 F. Supp. 3d 404, 409 (D. Md. 2014)  The proper question is whether the parties have the opportunity to "appreciate the full landscape of their case." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009); *see also Riddle v. City of Anderson*, 2015 U.S. Dist. LEXIS 192079, at *16 (D.S.C. Jan. 26, 2015) (finding that because both sides were fully aware of the factual issues, sufficient discovery had taken place); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. 2011) (extensive discovery is not necessary to justify a settlement as long as the parties have obtained sufficient information to evaluate the merits).

In this matter, the parties have engaged in significant discovery.  In total, the parties have completed seven depositions and Defendant has produced over 20,000 documents related to payroll, personnel records, and its compensation policies as well as payroll data for plaintiffs and class members during the relevant time period. This extensive document production allowed for an evaluation of Plaintiffs' claims and the calculation of damages.  Counsel is thus in a strong position to negotiate a fair settlement and advise the Plaintiffs of the advantages and disadvantages of litigating through trial.  This factor thus weighs in favor of preliminary approval. *See Hood,* 2019 WL 93546, at *5 (finding that the exchange of a 322,215-line spreadsheet and reviewing summary judgment records in parallel lawsuits over the

same issue, without conducting formal discovery, was sufficient to "allow [] the parties to adequately assess the claims and defenses.").

4. *Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5)*

"In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted); *Brown v. Delhaize Am., LLC*, 2015 U.S. Dist. LEXIS 184265, at *5 (M.D.N.C. July 20, 2015) (same); *Riddle*, 2015 U.S. Dist. at *18 (same). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted). A court should consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. *Id.* (citations omitted).

A trial on the merits would involve significant risks for Plaintiffs. The Plaintiffs will have to overcome Defendant's position that Plaintiffs fall within the Motor Carrier Act and were exempt from overtime compensation and were never promised overtime compensation. Although the Plaintiffs are confident that they could prevail on liability, Plaintiffs are also realistic and recognize the inherent risks. Even if Plaintiffs prevail, this victory could only be obtained after extensive briefing

and argument of an uncertain duration, and the process of trial and appellate litigation is always full of uncertainty. These factors thus weigh very strongly in favor of preliminary approval.

### 5. *Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6)*

While the Court has granted Plaintiff's motion for conditional and class certification, Plaintiff would still face motions to decertify at the conclusion of discovery, and there would be many issues in dispute. Plaintiff recognizes that the inherent uncertainty about maintaining class and collective certification for the entire scope plead, through trial. *See Brown,* 2015 U.S. Dist. LEXIS 184265, at *5. This factor thus weighs in favor of approval.

### 6. *Defendant's Ability to Withstand a Greater Judgment is Not Determinative (Grinnell Factor 7)*

While Defendant may have the capacity to withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000)); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017). Thus, given that all of the other *Grinnell* Factors weigh in favor of the proposed settlement, even if Defendant could withstand a greater judgment, this factor should not be an obstacle to preliminary approval.

7. *The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)*

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2; *see also*, *In re A.H. Robins Co.*, 880 F.2d 709, 748 (4th Cir. 1989); *Flinn*, 528 F.2d at 1173-74; *Horton*, 855 F. Supp. at 833.

Based on Plaintiffs' estimate that approximately $2.2 million in actual overtime and wage deductions would be due to members of the FLSA and Rule 23 Classes if Plaintiffs were to prevail on all of their claims, $1.5 million is a reasonable settlement, particularly when factoring the uncertainties of litigation. Defendant, of course, has asserted throughout litigation that ASTs have been paid all wages due. If Defendant were to prevail, even simply on the measure of damages, establishing that armored service technicians were owed overtime compensation under the FLSA

and were not promised overtime, Plaintiffs' estimated damages would be reduced to an amount that is substantially less than the current settlement amount. And of course, if Defendant prevailed in either motion to decertify the class or collective, far fewer individuals' damages would be at issue. Given this risk to Named, Opt-ins/Current Participants and plaintiffs and class members, this settlement is beneficial in that it provides a guaranteed monetary recovery for the entire Rule 23 class, and any FLSA opt-ins, that is potentially more generous than if the parties litigated this issue, as in no event shall any settlement funds revert to the Defendant, and the Court ruled in favor of Defendant on one or more aspects of the claims. Thus, the settlement amount here far exceeds the mere fraction of possible damages that has been approved in other cases in this Circuit.

## III.  THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule requires that any such notice "must clearly and concisely state in plain, easily understood language" the following items: (1) the nature of the action, (2) the definition of the class certified, (3) the class claims, issues, or defenses, (4) that a class member may enter an appearance through counsel if the member so desires, (5) that the court will exclude from the class any members

who request exclusion, stating when and how members may elect to be excluded, (6) the time and manner for requesting exclusion, and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*

The proposed notice[7] satisfies each of these requirements. It also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Courts have approved class notices even when they provided only general information about a settlement. *See Beaulieu v. EQ Indus. Servs.*, 2009 U.S. Dist. LEXIS 133023, at *81 (E.D.N.C. Apr. 20, 2009) (approving a proposed notice where it "generally provide[d] the requisite information as to both certification and settlement"). The detailed information in the proposed notice far exceeds this minimal standard and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the proposed notice will be mailed to all members of the Settlement Classes and Settlement Collective. Ex. A, § V(2). The proposed notice contains information on how to exclude oneself or object to the settlement, as well as how to make a claim for a share of the settlement. Ex. A, § V(A)(6). Each member will have sixty (60) days following the mailing of the notice to submit opt-out requests, comments, or objections, as well as a claim form for their share of the settlement. *See id*.

_____

[7] A copy of the proposed notice is attached

## IV. ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARDS

As set forth in the accompanying motions for attorney's fees and for service payments, incorporated by reference herein, Class Counsel's request for attorneys' fees, costs and expenses, and the proposed service payments to Plaintiff and the Current Opt-Ins, are also fair and reasonable.

## V. THE PROPOSED FLSA SETTLEMENT IS FAIR AND REASONABLE

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be. . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc.,* 679 F.2d at 1353.

When a plaintiff brings a proposed settlement of an FLSA claim before a court, the court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a *bona fide* dispute. *Id.* If a settlement in an FLSA suit

reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. As discussed briefly below, and as Plaintiff will also set forth in her motion for final settlement approval, the FLSA settlement here "is a fair and reasonable resolution of a bona fide dispute."

Importantly, only those FLSA Class members who actually submit a claim form to participate in the settlement or have already opted into the litigation will release their FLSA claims. Given the risks of continued litigation of the FLSA claims, this is a reasonable settlement. The potential risks include the eventual decertification of the conditionally certified collective. Defendant also would have contended that some members of the FLSA Class were, in some or all weeks, exempt from the overtime protections of federal law pursuant to the Motor Carrier Act exemption. *See* 29 U.S.C. § 213(b)(1). The exemption states that employees whose duties affect the safety and operation of motor vehicles in interstate commerce are not entitled to overtime pay under the FLSA, except for those employees who work, in whole or in part, on motor vehicles weighing 10,000 pounds or less. *See generally Botero v. Commonwealth Limousine Serv. Inc.*, 2013 WL 3929785, at *12 (D. Mass. July 25, 2013). Given these risks, and as Plaintiff will explain in greater detail when

she seeks final approval, the proposed settlement of FLSA claims is also fair and reasonable.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Unopposed Motion for Preliminary Approval of the Parties' Settlement Agreement, approve Angeion Group as Settlement Administrator, and approve Plaintiff's Notice of Settlement.


Dated:        November 4, 2019.


                                                    /s/ *Gilda Adriana Hernandez*
                                                    Gilda A. Hernandez (NCSB No. 36812)
                                                    Charlotte Smith (NCSB No. 53616)
                                                    **THE LAW OFFICES OF GILDA A.**
                                                    **HERNANDEZ, PLLC**
                                                    1020 Southhill Drive, Suite 130
                                                    Cary, NC 27513
                                                    Tel: (919) 741-8693
                                                    Fax: (919) 869-1853
                                                    ghernandez@gildahernandezlaw.com
                                                    csmith@gildahernandezlaw.com

                                                    Charles Robert Ash, IV, *pro hac vice*
                                                    Matthew L. Turner, *pro hac vice*
                                                    **SOMMERS SCHWARTZ, P.C.**
                                                    One Towne Square, Suite 1700
                                                    Southfield, MI 48076
                                                    248-355-0300
                                                    248-746-4001 (fax)
                                                    crash@sommerspc.com
                                                    mturner@sommerspc.com

                                                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2019, I electronically filed the foregoing true and accurate copy of the **BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; APPROVING OF PLAINTIFF'S NOTICE OF SETTLEMENT AND APPROVING ANGEION GROUP AS THE SETTLEMENT ADMINISTRATOR** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

Jerry Howard Walters
jwalters@littler.com
**LITTLER MENDELSON, P.C.**
Bank of America Corporate Center
100 N. Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704-972-7013
Facsimile: 704-333-4005

Claire B. Deason**,** *pro hac vice*
Lyndsey Marcelino, *pro hac vice*
**LITTLER MENDELSON, P.C.**
80 South 8th Street, Suite 1300
Minneapolis, MN 55402
612-313-7610
612-630-6926 (fax)
cdeason@littler.com
lmarcelino@littler.com

*Attorneys for Defendant*

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

Charles Robert Ash, IV, *pro hac vice*
Matthew L. Turner, *pro hac vice*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, MI 48076
248-355-0300
248-746-4001 (fax)
crash@sommerspc.com
mturner@sommerspc.com

*Attorneys for Plaintiff*