IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHAKEERA MYERS, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | CA No. 3:18-cv-00532-FDW-DSC |
| LOOMIS ARMORED US, LLC, | ) ) ) | |
| *Defendant.* | ) ) ) | |

**DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTIONS FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; APPROVAL OF SETTLEMENT ADMINISTRATOR; APPROVAL OF PLAINTIFFS' NOTICE OF SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND <u>REIMBURSEMENT OF EXPENSES, AND APPROVAL OF SERVICE AWARDS</u>**

I, Gilda Adriana Hernandez, declare as follows:

1.      I am an attorney in good standing, duly licensed and admitted to the North Carolina Bar.  I am an attorney with the Law Offices of Gilda A. Hernandez, PLLC ("GAH").  The testimony set forth in this Declaration is based on first-hand knowledge, about which I could and would testify competently in open Court if called upon to do so, and on records contemporaneously generated and kept by my Firm in the ordinary course of its law practice.

2.      I provide this Declaration for the purpose of setting forth the background to describe the work completed by my firm in this action, our rates, and

expenses incurred in the course of this litigation and to support Plaintiffs' Motion for Preliminary Approval of the Settlement.

### *Adequacy of Counsel*

3.     I graduated from the University of Illinois, Chicago with a B.A. in Criminal Justice and received my Juris Doctor degree from Southwestern University School of Law, Los Angeles, California.

4.     In 1997, I started my wage and hour career. I worked as a United States Department of Labor, Wage and Hour ("USDOL-WHD") official, enforcing and administering wage and hour laws pursuant to the Fair Labor Standards Act ("FLSA"), Family Medical Leave Act ("FMLA"), Davis Bacon Act ("DBA"), and Service Contracts Act ("SCA"). I investigated employers to determine their compliance with all relevant wage and hour laws, regarding overtime, minimum wage, prevailing wages, child labor, misclassification of salaried employees, and H-1(B) issues, in addition to, providing employers with guidance on achieving and maintaining compliance.

5.     In 2003, I interned with the United States Department of Labor – Solicitor of Labor, where I conducted legal research on relevant wage and hour laws and advised Regional Solicitors of Labor on whether cases were suitable for wage and hour litigation.

6.     Since 2008, I have worked in private practice, representing employees

exclusively in individual and collective/class action litigation for alleged violations of the FLSA and relevant state wage and hour laws. Since that time, I have represented thousands of workers and recovered millions of dollars in both nationwide and local actions. In 2011, I tried the first of its kind, NCWHA wage and hour class action in Mecklenburg County, obtaining a verdict on behalf of a class of janitorial workers, resulting in actual and liquidated damages, pre-judgement interest, and attorneys' fees and costs.

7.    GAH, together with Sommers Schwartz, P.C. ("SS"), are the attorneys for Plaintiffs and Rule 23 class members. Our firms represent plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour matters.

8.    Class Counsel have substantial experience in prosecuting and settling wage and hour collective/class actions and are well-versed in wage and hour law and class action law.

9.    Given my substantial experience in prosecuting wage and hour class and collective actions, I have regularly been appointed class counsel in such matters. *See*

*Kincaid v. Courier Express/Charlotte Inc., et al*, No. 1:18-cv-707-AT (N.D. Ga Jan. 31, 2019) (conditionally finding plaintiff's counsel "are adequate to serve as [c]lass [c]ounsel" and appointing GAH as class counsel for the settlement classes –

approximately 1500 couriers affected); *Berber v. Hutchison Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *2 (E.D.N.C. Aug. 14, 2018) (appointed class counsel in conditional/class certification action; affecting over 120 individuals); *Velasquez-Monterrosa v. Mi Casita Rests.,* No. 5:14-CV-448-BO, 2016 U.S. Dist. LEXIS 56089 (E.D.N.C. Sept. 26, 2017) (collective/class action affecting over 200 individuals; settlement approved for $2.5 million); *Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc*., No. 5:13CV810-F, 2015 U.S. Dist. LEXIS 1320225 (E.D.N.C. Sep. 28, 2015) ("named plaintiffs are also represented by competent and qualified counsel. Counsel has extensive experience litigating similar matters, including other wage and hour suits in North Carolina") (affecting over 200 workers); *Tomkins v. Amedisys, Inc.,* No. 3:12-cv-1082 (WWE), 2014 U.S. Dist. LEXIS 3660 (D. Conn. Jan. 13, 2014) (represented over 2500 clinicians in a nationwide action involving in excess of 35 states; settlement approved for $8 million in 2016); *Rindfleisch v. Gentiva Health Services, Inc.,* No. 1:10-cv-3288-SCJ, 2011 U.S. Dist. LEXIS 57949 (N.D. Ga. Apr. 13, 2011) (represented initially over 1,000 clinicians in a nationwide collective action in over thirty states; settlement approved for $3.3 million in 2017); *McLaurin v. Prestage Foods Inc.,* 271 F.R.D. 465, 479 (E.D.N.C. 2010) ("the court finds that plaintiffs' counsel possess the necessary qualifications….Gilda A. Hernandez shall serve as counsel for the class") (affecting approximately 1,800 Class Members); *see also Mitchell v.*

4

*Smithfield Packing Co.*, 2011 U.S. Dist. LEXIS 108974, *10 (E.D.N.C. 2011)[1] ("….Gilda Hernandez [who is a] capable trial counsel with substantial experience in complex civil litigation, including class action lawsuits"); *Horne v. Smithfield Packing Co.*, 2011 U.S. Dist. LEXIS 108978, *10 (E.D.N.C. 2011) ("The court finds that Ms. Hernandez ….will fairly and adequately represent the interests of the class"); *Romero v. Mountaire Farms Inc.*, 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011) ("the court finds that plaintiffs' counsel possess the necessary qualifications") (affecting approximately 10,000 poultry processing employees); *Guerrero et al v. Pro Klean, Inc.*, CA No. 09 CVS 29529 (Mecklenburg County, Superior Ct. 2012) ("Ms. Hernandez has specialized experience in the field of wage and hour law.").

10.    I have also been involved in many educational and legal groups, including the American Bar Association, National Employment Lawyers Association, the National Employment Law Project, the North Carolina Advocates for Justice, and the North Carolina Bar Association, for which I have authored articles relating to FLSA and NCWHA requirements. Additionally, I have lectured on various FLSA and NCWHA topics, including collective/class action litigation at meetings, conferences, and CLE programs sponsored by the National Employment Lawyers Association, the North Carolina Bar Association, and the North Carolina Advocates for Justice.

---

[1]Smithfield cases collectively affected approximately 3,500 Class Members.

11.     Charles Robert Ash, IV of SS is also experienced in prosecuting wage and hour class and collective actions and has been appointed Class Counsel numerous times based on that experience. *See* Dkt No. 65-1, Declaration of Charles Robert Ash, IV.

### *Nature of Plaintiffs' Claims*

12.     Defendant Loomis Armored US, LLC ("Defendant") is a national cash management specialty organization and is in the business of securely transporting cash and valuables in armored vehicles, typically to or from stores, banks, deposit boxes, and ATMs.   Defendant also provides cash management software; ATM replenishment, pickup, and maintenance services; and cash exchanges for businesses, among other services.

13.     Named Plaintiff Shakeera Myers ("Named Plaintiff") worked as an armed guard driver and as an armed messenger for Defendant at its Morrisville and Wilson, North Carolina, locations from approximately June 26, 2017, until April 10, 2018.   In approximately July or August of 2017, Named Plaintiff also temporarily worked a route assigned to Defendant's Fayetteville, North Carolina, location.  Named Plaintiff asserts claims on behalf of herself and all others similarly situated (collectively "Plaintiffs"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d). Named Plaintiff claims that

Defendants: (1) maintained a corporate policy of failing to compensate Plaintiffs for all hours worked; (2) underpaid and failed to lawfully compensate Plaintiffs at the appropriate straight and overtime rates for all owed, earned, or promised wages; (3) took unauthorized deductions from Plaintiffs' wages for firearms and bulletproof vests; and (4) violated statutory record-keeping provisions. Additionally, Named Plaintiff has brought a claim for sex-based harassment, discrimination, and retaliation, pursuant to the Sex Discrimination in Employment Act, by Title VII, 42 U.S.C. § 2000e(b).

14.     On these grounds, Named Plaintiff sought to recover on her own behalf, as well as on behalf of two classes, FLSA (opt-in plaintiffs) and Rule 23 (opt-out) class members, consisting of employees who were not paid alleged overtime and promised wages, had alleged unauthorized deductions, and seeking unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

### *Plaintiffs' Initial Investigation of Potential Claims*

15.     Named Plaintiff retained the Law Offices of Gilda A. Hernandez, PLLC for legal representation on June 22, 2018. Beginning in June 2018 through September 2018 and prior to filing this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA

statute of limitations, the proper measure of damages, and the likelihood of class certification. After substantial investigation and corroboration of Named Plaintiff's allegations, Plaintiffs' initiated this lawsuit.

16. Plaintiffs' Counsel also conducted in-depth interviews with Named Plaintiff and opt-in Plaintiff Trevon Conyers as well as putative class members for a total of about nine (9) individuals, to determine the hours that they individually worked, unpaid overtime, unpaid promised wages, the wages they were paid, any unauthorized deductions that were withheld from their pay, and other information relevant to their claims and those of other putative plaintiffs and Rule 23 class members.

17. Throughout litigation, Plaintiffs' Counsel has maintained contact with each named and opt-in plaintiff, addressing concerns, providing progress updates, and seeking additional information regarding new assertions by Defendant.

### *The Litigation and Settlement Negotiations*

18. On October 1, 2018, Named Plaintiff filed a complaint in the U.S. District Court for the Western District of North Carolina, and Trevon Conyers filed a Consent to File Suit as Plaintiff, raising putative collective-action claims under the FLSA and putative class-action claims under North Carolina state law. *See* Dkts. No. 1, 4.

19. On November 20, 2018, Defendant Loomis Armored filed its Answer

and Affirmative Defenses. *See* Dkt. No. 10. On May 23, 2019, Craig Abbott, Kenneth Brooks, Shamekia Butler, Charles Peppers, and Michael Smith each filed a Consent to File Suit as Plaintiff. *See* Dkt. No. 24. On June 4, 2019, Richard Jackson filed a Consent to File Suit as Plaintiff. *See* Dkt. No. 29. On July 12, 2019, Berry Packer and Marvin Blue filed Consents to File Suit as Plaintiffs. *See* Dkt. No. 36.

20. On May 23, 2019, Plaintiff filed her motion for both conditional and class certification pursuant to both the FLSA and Rule 23 of the Federal Rules of Civil Procedure. *See* Dkts. No. 24-27. On May 30, 2019, pursuant to the Court's instructions, Plaintiff filed an Amended Memorandum in Support of her Motion for Conditional and Class Certification to address the excess page limit. *See* Dkt. No. 28.

21. On June 13, 2019, Defendant filed its Memorandum in Opposition to Plaintiff's Motion for Conditional and Class Certification pursuant to the FLSA and Rule 23 of the Federal Rules of Civil Procedure. *See* Dkt. No. 31. On June 20, 2019, Plaintiff filed her Reply Brief in Support of the same. *See* Dkt. No. 33.

22. On July 25, 2019, the Court granted Plaintiff's motion for conditional and class certification but denied without prejudice Plaintiff Myers's proposed notice to both the FLSA and Rule 23 classes. *See* Dkt. No. 37.

23.    On August 5, 2019, following the parties' required meet and confer to address outstanding disputes regarding the appropriate notice, the parties filed competing proposals regarding notice to the FLSA and Rule 23 classes. *See* Dkts. No. 38-39.   On August 9, 2019, the Court granted Plaintiff's proposed notice with modifications, which included, but not limited to, a thirty (30) day notice period for FLSA putative Plaintiffs to file consents to file suit as Plaintiffs and Rule 23 Class Members to opt-out of the lawsuit. *See* Dkt. No. 40.  As of November 4, 2019, approximately 217[2] FLSA putative Plaintiffs have filed Consents to File Suit, and approximately six (6) Rule 23 Class Members have filed opt-out forms. *See* Dkts. No. 46-49, 53-54, 56, 58.

24.    On September 16, 2019, the Parties participated in mandatory mediation whereby Plaintiff engaged in a damages analysis pursuant to data produced by Defendant as part of the parties' discovery obligations.  Defendant produced weekly pay records, start and end dates, and other compensation data for every Rule 23 Settlement Class Member and Putative FLSA Collective Member, at that time. This encompassed over two gigabytes of voluminous electronic financial and payroll records. Plaintiffs and Defendant submitted a mediation statement to the mediator. The Parties attended mediation on September 16, 2019, before mediator Hunter Hughes III, a nationally recognized class- and collective-action wage and

---

[2] Including Named Plaintiff.

hour mediator, at his offices in Atlanta, Georgia. The mediation and follow-up discussions thereto resulted in this Settlement Agreement.

25.　　For a true and correct copy of the Settlement Agreement with proposed Notice(s) and Claim Forms, *see* Dkt. No. 63-1.

26.　　At all times during the settlement negotiation process, negotiations were conducted at arms'-length.

27.　　Since the mediation, Class Counsel have drafted the settlement agreement, notice, and various motions and other documents necessary to effectuate the proposed settlement.

### *Risk of Litigation*

28.　　Plaintiffs believe that the claims, allegations, and contentions asserted in the Action have merit. However, Plaintiffs also recognize and acknowledge the risk inherent in any litigation, as well as the expense and delay of continued lengthy proceedings necessary to prosecute the Action against Defendant through trial and through appeals. Plaintiffs have taken into account the uncertain outcome of the litigation, the risk of continued litigation in complex actions such as this, as well as the difficulties and delays inherent in such litigation, and the potential difficulty of opposing decertification of the Action as well as trying the claims of the FLSA and Rule 23 Classes. Class Counsel is mindful of the potential problems of proof under, and possible defenses to, the claims alleged in the Action.

29.     Class Counsel believes that this Settlement confers substantial benefits upon the Participating FLSA Collective Members and the Rule 23 Settlement Class Members and that an independent review of this Settlement by the Court in the approval process will confirm this conclusion. Based on their own independent investigation and evaluation, Class Counsel have determined that the Settlement set forth in the Settlement Agreement is in the best interest of the FLSA Collective Members and Rule 23 Settlement Class Members.

### *The Settlement Fund*

30.     Class Counsel believe the settlement represents a substantial recovery for Plaintiffs and Class Members, particularly in light of the risks of litigation. These risks include the risk of decertification, losing on the merits, and losing on appeal.

31.     Here, Defendants have agreed to settle this case for an amount of $1.5 million, which Class Counsel believe is substantial.

32.     Simultaneous with Plaintiff's Unopposed Motion for Approval of Attorneys' Fees and Expenses, Plaintiff has also filed Unopposed Motions for Preliminary Approval of Class and Collective Action Settlement; Approval of Settlement Administrator and Approval of Plaintiff's Notice of Settlement.

### *Settlement Administrator*

33.     Subject to Court approval, the parties intend to retain Angeion Group to administer the settlement. If the Court grants preliminary approval to the Parties'

proposed settlement, it is anticipated that once Angeion Group sends the Notice of Settlement, Class Counsel and staff will have to respond to numerous class members' questions about the terms of the settlement and the amount of their settlement award.

### *Time Spent on the Litigation*

34.     As of October 30, 2019, both GAH and SS have spent more than 1,100 hours litigating and settling this litigation, including time spent by attorneys, paralegals, and law clerks.

35.     Throughout this case, SS and GAH made efforts to work efficiently and avoid duplication.  For example, GAH took primary responsibility for drafting the complaint and motion for conditional certification along with the supporting declarations.   As part of this process, GAH took primary responsibility for interviewing plaintiffs and coordinating with potential opt-ins plaintiffs.   SS provided information concerning a suit against Defendant, the *Colon* matter, which concerned similar allegations and was settled before this matter was initiated. This information was critical for Plaintiffs to properly calculate damages for any plaintiff that was involved in the *Colon* matter.   Additionally, after mediation, GAH took primary responsibility in drafting the motion and supporting brief for preliminary approval, proposed order, motion and supporting brief for fees and litigation expenses, and motion and supporting brief for service awards.

36.   As such, a small team of attorneys from both firms was primarily utilized at any one time in order to minimize duplication of efforts and maximize billing judgment.  GAH has up to date detailed time records with redactions to protect attorney work product and attorney/client privilege, and they are available upon request for the Court's *in-camera* review.

37.   The hours reported are reasonable for a case of this complexity and size. They were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

### *GAH's Rate*

38.   As a 22-year wage and hour practitioner, my current rate is $650.00 per hour for this type of litigation.  Notably, though, all wage and hour individual or class action lawsuits litigated by GAH are done so on a pure contingency fee basis, meaning GAH does not require clients to pay hourly fees or retainers and if a matter does not result in money recovery, GAH recovers no attorney's fees, and is not reimbursed for any out-of-pocket expenditures.

39.   Since January 2013, (when I started my practice), my rate has increased by less than 10%, from $595 per hour to $650 per hour, which is a fair change proportionate to the risk associated with contingency fees and the firm's growth, high demand, and increased experience in wage and hour litigation.  GAH's rates are consistent with the usual and customary hourly rates for the type of work GAH

performed, as established in similar collective/class action matters, nation and state-wide. *Rehberg v. Flowers Banking Co. of Jamestown, LLC*, No. 3:12-cv-00596, Dkt. 250 (W.D.N.C. June 30, 2017) (approving hourly rates ranging from $375 per hour (associate) to $975 per hour (partner); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (approving as reasonable rates ranging from $440 to $775 for partners and $295 to $525 for associates); *Dooley v. Saxton*, No. 1:12-cv-01207-MC, ECF No. 187 (D. Or. Oct. 19, 2015) (approving as reasonable rates ranging from $375 to $790 per hour); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (approving as reasonable "$240–$260 for paralegals, $415–$530 for associates, and $635–$775 for partners"); *Parker v. Dish Network, L.L.C.*, No. 4:11-cv-1457, ECF No. 63 (N.D. Cal. Feb. 13, 2012), granted, ECF No. 87 (Apr. 17, 2012) ($530 to $710 for partners and $350 for associates).

40.     GAH's hourly rate(s) have also been separately approved for payment by courts in other litigation. *See, e.g., Berber v. Hutchison Tree Serv.,* No. 5:15-CV-143-D, Dkt. 119 (E.D.N.C. Mar. 1, 2019) ("Plaintiff's Counsel are awarded attorneys' fees in the amount equal to one-third of the Maximum Gross Settlement Amount (i.e., $1,000,000.00)."); *Kincaid v. Courier Express/Charlotte, Inc., et al*, 1:18-cv-707-AT, Dkt. 87 (N.D. Ga Jan. 31, 2019) ("Plaintiff's Counsel are awarded attorneys' fees in the amount equal to one-third of the Maximum Gross Settlement

Amount (i.e., $533,333.33) should the Court grant final approval. . ..");  *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2016 WL 1703351 (E.D.N.C. Sept. 26, 2017) (approving GAH's former $595 rate and approving one-third of the settlement fund for class counsel's attorneys' fees); *In Re Gentiva Health Services Inc*., No: 1:14CV01892-WBH, Dkt. 113 (June 22, 2017) (approving GAH's former $595 rate as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *Tomkins v. Amedisys*, No. 3:12-cv-1082 (D. Conn. 2016) (approving GAH's $595 rate of three years ago as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *McLaurin v. Prestage Foods*, 2012 U.S. Dist. LEXIS 13086 (E.D.N.C. Feb. 3, 2012) (same, at the then-charged lower rate of $385 per hour, while GAH was a firm associate, not owner, and before attaining an additional seven years of collective/class action experience both locally and in nationwide actions, and stating, "[T]he court [allows] the motion for attorneys' fees and awards attorneys' fees . . . . [t]he court finds this amount to be reasonable in light of the complexity of the case, the history of the litigation, and the results obtained").

### *Plaintiffs Counsels' Lodestar*

41.    As of October 13, 2019, GAH's lodestar is $437,545.00.   Class Counsel's total lodestar on the case, thus far, is $448,427,00.

42.    GAH's lodestar calculation is made based upon our current billing rates

for each timekeeper, multiplied by their recorded hours.

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Hernandez, Gilda A. | Attorney | $650 | 473.8 | $307,744.50 |
| Smiley, Emma | Attorney | $300 | 56.1 | $16,830.00 |
| Smith, Charlotte | Attorney | $275 | 274.6 | $75,515.00 |
| Tucci, Robert | Attorney | $125 | 42.2 | $5,275.00 |
| Kreuz, Rachael | Sr. Paralegal | $190 | 71.0 | $13,480.50 |
| Romero, Michelle | Paralegal | $110 | 110 | $12,094.50 |
| Wright, Jacob | Law Clerk | $110.00 | 71.6 | $6444.00 |
| Rodrigues, Adam | Summer Intern | $95.00 | 1.7 | $153.00 |
| **Total** | | | | **$437,698.00** |

43.     The time worked on this case overall is more substantial than the time set forth above.  In this fee petition, I have excluded time worked by individuals who had very limited involvement in the litigation, generally assisting when the regular paralegals were unavailable, or any other time that I did not believe should be included in an exercise of the Firm's billing judgment.  In total, I have excluded $153.00.  With this reduction, I believe that the remaining time was reasonably and necessarily expended in the prosecution of this action on behalf of putative plaintiffs and class members.  In addition, work was done even after the settlement in principle

was reached. Such time includes, but is not limited to, reviewing, and/or editing the draft of the settlement agreement, drafting the motion for preliminary approval, proposed order, brief in support, fee petition, declaration(s), exhibits, and motion for service awards, and that time is included here.

44.    If the Court grants final approval to the Parties' proposed settlement agreement, Plaintiffs' Counsel also expects to respond to more class member inquiries after that final approval order, especially after checks are issued. Plaintiffs' Counsel also expect to spend additional time working on this case, including preparing for and attending the final fairness hearing, answering class member questions, and answering questions from the Settlement Administrator.

45.    In Plaintiffs' Counsel's experience, settlements of this nature and size require a substantial ongoing commitment. Plaintiff's Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk. Wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make tremendous investment of time. Class Counsel stood to gain nothing in the event the case was unsuccessful.

***Expenses Incurred in this Litigation***

46.     As of October 25, 2019, Class Counsel have incurred a total of approximately $33,000.14, in litigation expenses to prosecute this litigation.   GAH has incurred approximately $33,000.14 in litigation expenses (i.e., postage, courier fees (UPS and FedEx), long distance, computer legal research, transportation, hotel, working meals, photocopies, and electronic research, and expert fees).  The expenses incurred were reasonable and necessary under the circumstances of this litigation. The expenses incurred in this action are reflected on the books and records of this firm.  These books and records are prepared from invoices, expense vouchers, and other source materials and are an accurate record of the expenses incurred.  The underlying invoices and receipts are available for inspection if the Court requests. The expenses incurred by our Firm can be divided into the following categories:

| Category | Amount | Category | Amount |
|---|---|---|---|
| Mailing Expenses | $36.40 | Deposition Travel Expenses (Texas and Charlotte, NC) | $4,473.84 |
| Expert Fees | $12,696.25 | Deposition Court Reporter Expenses | $8,413.62 |
| Western District of NC Filing Fees | $962 | Angeion Group – Notice Distribution | $4,189.20 |
| Mediation Travel – Hotel | $648.54 | | |
| Mediation Travel – Meals | $161.49 | | |
| Mediation Travel – Transportation | $1,418.80 | | |
| **Total** | | | **$33,000.14** |

Plaintiffs' Counsel also anticipate incurring additional litigation expenses in travel,

meals, and miscellaneous expenses relating to any potential upcoming fairness hearing, meetings with client(s) to discuss the potential fairness hearing, including any potential traveling to meet with them, ongoing long-distance communications with class members and opt-in plaintiffs to discuss settlement payments before and after distribution of such payments, and any other miscellaneous expenses not anticipated. As such, Class Counsel requests an amount not to exceed $35,000.00 in litigation expenses.

### *Service Awards for named and opt-in Plaintiffs.*

47. Named Plaintiff Shakeera Myers, and Opt-In Plaintiffs have made important contributions to the prosecution and fair resolution of this case on behalf of opt-in plaintiffs and putative Plaintiffs and Class Members.

48. Named and Opt-In Plaintiffs assisted Plaintiffs' Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties, job locations, compensation, and Defendants' recordkeeping and compensation practices and other information relevant to their claims. Several of the Named and Opt-In Plaintiffs submitted declarations in support of Plaintiffs' motion for conditional certification.

49. Named and Opt-In Plaintiffs provided extensive information, and in some cases, declarations in support of Plaintiffs' Motion for Conditional Certification. Additionally, Named Plaintiff and several Opt-In Plaintiffs prepared

for and sat for depositions during Phase I discovery. Named Plaintiff also reviewed extensive documents produced during the mediation process and discussed various aspects of the case as needed.

50.     Specifically, Named Plaintiff provided extensive information about the nature of Defendant's policies and practices relating to timekeeping, deductions, and recordkeeping. During the investigative phase of this matter, litigation and prior to/following mediation, Named Plaintiff met with Plaintiffs' counsel several times, to bring and review documents. Similarly, Opt-In Plaintiffs who previously submitted a written consent form requesting to join the FLSA collective action in this case should receive a minimum settlement payment of $2,500 in recognition of their support in prosecuting this case, to explain the policies and practices while employed with Defendant. These service awards reflect the significant contributions they made to the case and the time and effort spent in producing, coordinating, reviewing documents and information, and preparing and sitting for depositions.

51.     Overall, their involvement in the case was instrumental to Plaintiffs' counsel's ability to prosecute these claims, and without their hard work, effort, and risks taken, the parties may not have been able to reach a settlement agreement at this stage.

52.     Therefore, I believe service awards in the following amounts are reasonable: $20,000 for Named Plaintiff Shakeera Myers; $12,500 for early opt-in

Plaintiff Trevon Conyers; $5,000 each for opt-in Plaintiffs Craig Abbott, Michael Smith, Shamekia Butler, and Charles Peppers; $4,000 for opt-in Plaintiff Marvin Blue; $3,000 for opt-in Plaintiff Kenneth Brooks; and $2,500 each for opt-in Plaintiffs Richard Jackson and Berry Packer.

I declare under penalty of perjury, under 28 U.S.C. § 1746, under the laws of North Carolina that the foregoing is true and correct to the best of my knowledge.

Executed this 4 November 2019.

*/s/Gilda Adriana Hernandez*
Gilda A. Hernandez NCSB #36812
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

*Attorney for Plaintiffs*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on November 4, 2019, I electronically filed the foregoing true and accurate copy of **DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**S **FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; APPROVAL OF SETTLEMENT ADMINISTRATOR; APPROVAL OF PLAINTIFFS' NOTICE OF SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND APPROVAL OF SERVICE AWARD** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

Jerry Howard Walters
jwalters@littler.com
**LITTLER MENDELSON, P.C.**
Bank of America Corporate Center
100 N. Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704-972-7013
Facsimile: 704-333-4005

Claire B. Deason**,** *pro hac vice*
Lyndsey Marcelino, *pro hac vice*
LITTLER MENDELSON, P.C.
80 South 8th Street, Suite 1300
Minneapolis, MN 55402
612-313-7610
612-630-6926 (fax)
cdeason@littler.com
lmarcelino@littler.com

*Attorneys for Defendant*

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB # 36812)
Charlotte Smith (NCSB # 53616)

**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**

1020 Southhill Drive, Suite 130

Cary, NC 27513

Telephone: (919) 741-8693

Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

Charles Robert Ash, IV, *pro hac vice*
Matthew L. Turner, *pro hac vice*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, MI 48076
248-355-0300
248-746-4001 (fax)
crash@sommerspc.com
mturner@sommerspc.com

*Attorneys for Plaintiffs*