IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| SHAKEERA MYERS, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | CA No. 3:18-cv-00532-FDW-DSC |
| LOOMIS ARMORED US, LLC, | ) ) | |
| *Defendant.* | ) ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE AND
CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTUAL & PROCEDURAL HISTORY .............................................................. 1

       A.    The Nature of Plaintiff's Claims .................................................................. 1

       B.    Procedural History ........................................................................................ 2

       C.    Settlement Negotiations ................................................................................ 5

       D.    Plaintiffs' Motion for Preliminary Approval ............................................... 5

       E.    CAFA Notices ............................................................................................... 7

III.   SUMMARY OF SETTLEMENT TERMS ............................................................. 7

       A.    Monetary Awards .......................................................................................... 7

       B.    Eligible Employees........................................................................................ 8

       C.    Releases ......................................................................................................... 9

       D.    Tax Withholdings ........................................................................................ 10

       E.    Attorneys' Fees, Litigation Costs, and Service Award ............................... 11

       F.    Settlement Claims Administrator ................................................................ 11

IV.    FINAL APPROVAL OF THE SETTLEMENT .................................................... 13

       A.    The Proposed Settlement is Fair, Reasonable, and Adequate and
             Should be Approved in All Respects. .......................................................... 13

       B.    The Proposed Settlement is Procedurally Fair. .......................................... 14

       C.    The Proposed Settlement is Substantively Fair.......................................... 16

             1.    Litigation Through Trial Would be Complex, Costly, and
                   Long (Grinnell Factor 1) ................................................................... 17

             2.    The Reaction of the Classes Has Been Positive (Grinnell
                   Factor 2) ............................................................................................ 18

3.    Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3) ......................................................................... 18

4.    Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5) ................................................. 20

5.    Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6) ................................................................ 21

6.    Defendants' Ability to Withstand a Greater Judgment is Not Determinative (Grinnell Factor 7) .................................... 21

7.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ................................................. 22

V.    APPROVAL OF THE FLSA SETTLEMENT ....................................... 23

VI.    CONCLUSION ..................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Ansoumana v. Gristede's Operating Corp.*,
 201 F.R.D. 81 (S.D.N.Y. 2001) ................................................................... 24

*Brown v. Delhaize Am., LLC*
 2015 U.S. Dist. LEXIS 184265 (M.D.N.C. July 20, 2015) .................................... 20, 21

*City of Detroit v. Grinnell Corp.*
 495 F.2d 448 (2d Cir. 1974) ................................................................. passim

*de la Cruz v. Chopra*,
 2018 U.S. Dist. LEXIS 85213 (D. Md. May 21, 2018) ............................................. 24

*Deem v. Ames True Temper, Inc.*,
 2013 WL 2285972 (S.D.W. Va. May 23, 2013) ........................................................ 18

*Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*
 573 F. Supp. 2d 205 (D.D.C. 2008) ................................................................ 19

*Evans v. Jeff D.*
 475 U.S. 717 (1986) ............................................................................. 22

*Flinn v. FMC Corp.*
 528 F.2d 1169 (4th Cir. 1975) .................................................................. 16

*Frank v. Eastman Kodak Co.*,
 228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................... 21, 22, 23

*Hall v. Higher One Machs., Inc.*
 2016 U.S. Dist. LEXIS 131009 (E.D.N.C. Sep. 26, 2016) .......................................... 14

*Hoffmann-LaRoche Inc. v. Sperling*,
 493 U.S. 165 (1989) ............................................................................. 24

*In re Austrian & German Bank Holocaust Litig.*
 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................................... 19, 22

*In re Dollar Gen. Stores FLSA Litig.*
 2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011) ........................................... 15

*In re MI Windows & Doors Prods. Liab. Litig.*
 2015 U.S. Dist. LEXIS 95889 (D.S.C. July 23, 2015) ............................................. 20

iv

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp.2d 654 (E.D. Va. 2001) ............................................................ 16

*In re Vitamins Antitrust Litig.*
    305 F. Supp. 2d 100 (D.D.C. 2004) ............................................................ 19

*In re Warfarin*,
    391 F.3d 516 (3d Cir. 2004) ..................................................................... 19

*Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ................................................................... 16

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ..................................................................... 23

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ................................................................ 24

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................... 18

*Matthews v. Cloud 10 Corp.*
    2015 U.S. Dist. LEXIS 114586 (W.D.N.C. Aug. 27, 2015) ................................... 14, 15

*McKenna v. Champion Intern. Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ................................................................. 24

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. 2010).......................................... 24

*Newman v. Stein*
    464 F.2d 689 (2d Cir. 1972) ..................................................................... 22

*Riddle v. City of Anderson*,
    2015 U.S. Dist. LEXIS 192079 (D.S.C. Jan. 26, 2015) ......................... 19, 20

*Robinson v. Harrison Transp. Servs., Inc.*
    2016 U.S. Dist. LEXIS 86294 (E.D.N.C. June 30, 2016) ........................... 15

*Saman v. LBDP, Inc.*
    2013 U.S. Dist. LEXIS 83414 (D. Md. June 13, 2013)............................... 15

*Vaughns v. Bd. of Educ.*
    18 F. Supp. 2d 569 (D. Md. 1998)............................................................ 17

*Velasquez-Monterrosa v. Mi Casita Restaurants*
   No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017) ................................ 22

*Velazquez v. Burch Equip., LLC*
   2016 U.S. Dist. LEXIS 29426 (E.D.N.C. Mar. 8, 2016) ................................................ 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................................ 13

**Other Authorities**
Fed. R. Civ. P. 23 (e) ................................................................................................. 13, 14

# I.   INTRODUCTION

Plaintiff submits this Memorandum of Law in support of her Unopposed Motion for Final Approval of the Collective and Class Action Settlement ("Plaintiff's Motion for Final Approval").[1]   The Parties' settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.   Plaintiff seeks an Order approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement of Class and Collective Action and Release of Claims ("Settlement Agreement"), as well as approval of Plaintiff's unopposed motions for attorneys' fees and expenses and a service award.   *See* Dkts. 63-1, 64-67.   On December 16, 2019, the Court took the first step in the settlement-approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing on approval of the settlement and the request for attorneys' fees and expenses and the requested service award. *See* Dkt. 69.   To date, there have been zero requests for exclusion, and none have objected to the settlement. *See* Ex. 1 (Dkt. 77-1), Declaration of Angeion, at ¶¶ 19-20.[2]   With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

# II.   FACTUAL & PROCEDURAL HISTORY

## A.   The Nature of Plaintiff's Claims

Plaintiff asserts that she and similarly situated individuals are former or current

---

[1] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

[2] *See* Dkt. 77-1, Declaration of Brian Manigault, Angeion Group ("Angeion") Project Manager, (hereinafter, "Angeion Decl."), attached hereto as Exhibit 1.

Armored Service Technicians ("ASTs"), or a similar position, employed by Defendant Loomis Armored US, LLC ("Defendant" or "Loomis"). Plaintiff asserts Loomis violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* by allegedly failing to pay its ASTs, including armed drivers, armed messengers, and armed guards, all wages owed, including overtime at a rate of one-and-one-half their regular rate of pay for work performed in excess of forty (40) hours per week. Plaintiff also alleges violations of the North Carolina Wage and Hour Act ("NCWHA"). To support her NCWHA claim, Plaintiff alleges that Loomis allegedly maintained a corporate policy of deducting the costs of bulletproof vests and firearms from employees' wages, without obtaining the employees' prior written authorization as well as failing to pay employees all promised wages, including compensation at a rate of one-and-one-half their regular rate of pay for worked performed in excess of forty (40) hours per week.[3]

B.   Procedural History

On October 1, 2018, Plaintiff Shakeera Myers filed this action on behalf of herself and other similarly situated ASTs who were or are employed by Defendant, seeking to recover unpaid overtime and minimum wages under the FLSA and unpaid wages under the North Carolina wage laws, and Trevon Conyers filed a Consent to File Suit as plaintiff the same day. Specifically, Plaintiff asserts that Defendant violated the Fair Labor Standards

---

[3] Consistent with the Settlement Agreement, Defendant does not oppose this motion. Plaintiff acknowledges, however, that Defendant denies any and all claims of wrongdoing, and does not assent to Plaintiff's characterization of the facts herein. While Defendant does not oppose this motion, and also desires that the Court approve the parties' settlement, the legal arguments made herein in support of the motion are Plaintiff's own.

2

Act ("FLSA"), 29 U.S.C. § 201 *et seq*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*, by: (1) failing to compensate employees at the premium overtime rate of one-and-one-half times their regular hourly rate for all hours over forty; (2) failing to pay Plaintiff and class and collective members all promised, owed and/or earned wages; and (3) subjecting Plaintiff and class and collective members to unlawful deductions and/or withholdings. *See* Dkt. 1. On November 20, 2018, Defendant filed its Answer and Affirmative Defenses. Dkt. 10.

On February 4, 2019, Defendant provided its first responses to Plaintiff's interrogatories and request for production of documents. As a result of this production and the parties' disagreement over the scheduling of multiple depositions, the parties briefed discovery disputes for the Court and participated in a conference call with the Court on April 9, 2019. Following this call and an extensive amount of supplemental discovery productions by Defendant, Plaintiff deposed Defendant's Rule 30(b)(6) designee on May 16, 2019, and Defendant deposed Named Plaintiff Myers on May 20, 2019 and opt-in Plaintiff Conyers on May 22, 2019. On August 27, 2019, Defendant deposed Craig Abbott and Marvin Blue. On August 28, 2019, Defendant deposed Shamekia Butler. On August 29, 2019, Defendant deposed Charles Peppers and Michael Smith. Finally, while depositions of Kenneth Brooks, Richard Jackson, and Berry Packer were scheduled to take place around this same time period, they were cancelled due to Hurricane Dorian.

On May 23, 2019, Craig Abbott, Kenneth Brooks, Shamekia Butler, Charles Peppers, and Michael Smith each filed a Consent to File Suit as Plaintiff. Dkt. 24. On June 4, 2019, Marvin Blue and Richard Jackson filed a Consent to File Suit as Plaintiffs, and

Named Plaintiff also filed her motion for both conditional and class certification pursuant to both the FLSA and Rule 23 of the Federal Rules of Civil Procedure. Dkt. 36; Dkt. 25. On May 30, 2019, pursuant to the Court's instructions, Plaintiff filed an Amended Memorandum in Support of her Motion for Conditional and Class Certification to address the excess page limit. Dkt. 28. On June 13, 2019, Defendant filed its Memorandum in Opposition to Plaintiff's Motion for Conditional and Class Certification pursuant to the FLSA and Rule 23 of the Federal Rules of Civil Procedure. Dkt. 30. On June 20, 2019, Plaintiff filed her Reply Brief in Support of her Motion for Conditional and Class Certification. Dkt. 33. On July 25, 2019, the Court granted Plaintiff's motion for conditional and class certification, certifying the Rule 23 Class and conditionally certifying the FLSA collective, but denied without prejudice Plaintiff Myers's proposed notice to both the FLSA and Rule 23 classes. Dkt. 40.

The parties filed competing proposals regarding notice to the FLSA and Rule 23 classes. Dkts. 39, 38. On August 9, 2019, the Court granted Plaintiff's proposed notice with modifications, including, but not limited to, a thirty (30) day notice period for FLSA Plaintiffs to file Consents to File Suit as Plaintiffs and Rule 23 Class Members to opt-out of the lawsuit. Notice was sent to all 727 identified class members on August 15, 2019. Dkt. 44. As of November 4, 2019, approximately 217[4] FLSA Plaintiffs had filed Consents to File Suit, and approximately six (6) Rule 23 Class Members have filed opt-out forms. Dkt. 40.

---

[4] Including Named and Early Opt-In Plaintiffs.

## C.    Settlement Negotiations

Beginning around mid-November 2018, the parties discussed early mediation in this matter. The parties were unable to come to an agreement regarding the scope of the classes and postponed mediation discussions until more discovery had been completed. In May 2019, the parties again revisited discussions of mediation, and on May 13, 2019, the parties filed a joint motion to stay litigation to pursue mediation. Dkt. 23. On May 23, 2019, the Court, by Text-Only Order, denied the parties' joint motion to stay. The parties planned to mediate the litigation near the close of discovery.

Following the Court's Order granting of Plaintiff's motion for conditional collective and class certification and the subsequent notice period, Plaintiff engaged in a damages' analysis using data produced by Defendant as part of the parties' discovery obligations. Dkt. 40. Defendant produced weekly pay records, start and end dates, and other compensation data for every Rule 23 Settlement Class Member and FLSA Collective Member, at that time. Plaintiffs and Defendant submitted a mediation statement to the mediator.

The Parties attended mediation on September 16, 2019, before mediator Hunter Hughes III, a nationally recognized class- and collective-action wage and hour mediator, at his offices in Atlanta, Georgia. The mediation and follow-up discussions thereto resulted in the Settlement Agreement attached hereto.

## D.    Plaintiffs' Motion for Preliminary Approval

On November 4, 2019, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement consistent with the Parties' Settlement Agreement, to (1) approve

5

collective and class action settlement; (3) approve the appointment of Angeion Group, as settlement administrator; and (4) approve the proposed Notice and Claim Form. (Dkt. 62).

On December 16, 2019, the Court preliminarily approved, subject to further consideration thereof at the Final Approval Hearing, (1) the Parties' Settlement Agreement; (2) the proposed Notices for mailing, consistent with the procedures outlined in the Parties' Settlement Agreement; (3) the appointment of Angeion as the Settlement Administrator. (Dkt. 69). Consistent with the Parties' Settlement Agreement, the Court set the deadline of sixty (60) days after the mailing of the notice of settlement for members of the certified class to submit claim forms, opt out of the settlement, or submit an objection. *See id.* Pursuant to Rule 23 (e) of the Fed. R. Civ. P., the Court scheduled a fairness hearing for April 8, 2020 at 9:30 a.m., to determine whether the proposed Settlement Agreement is fair. *Id.*

On January 14, 2020, the parties filed a joint motion for extension to mail notice of settlement by January 22, 2020. Dkt. 72. The Court granted the Parties' motion on January 15, 2020. On January 22, 2020, notice of the settlement was sent to class members who did not previously opt into the action. On January 23, 2020, a letter was sent to 217 opt-in plaintiffs who had previously opted into the action, to advise them that no further information was required for their participation in the settlement since they had previously opted into the action.

Finally, Angeion was appointed to serve as the neutral, third-party Settlement Administrator in this case, Dkt. 69, and consistent with the Parties' Settlement Agreement,

the Court ordered and authorized Angeion to perform the administrative duties as outlined in its December 16, 2019 Order. *Id.*

### E. CAFA Notices

Following the Court's order granting preliminary approval to the Parties' proposed settlement, Dkt. No. 69, Angeion sent notices on behalf of Defendant to the appropriate federal and state authorities required by the Class Action Fairness Act ("CAFA") on or around January 9, 2020. *See* 28 U.S.C. § 1715(d). The 90-day CAFA notice period concludes on April 8, 2020. *Id.* No federal or state authorities commented on the settlement or objected to it. *Id.*

## III. SUMMARY OF SETTLEMENT TERMS

### A. Monetary Awards

The Settlement Agreement creates a non-reversionary, "all-in" settlement fund consisting of a Maximum Gross Settlement Amount of $1,500,000, (the "Gross Settlement Amount"), which covers all awards to "Participating Rule 23 Settlement Class Members and Participating FLSA Collective Members" (as defined in the Settlement Agreement), service awards to named Plaintiff and the nine early opt-in plaintiffs, Trevon Conyers, Shamekia Butler, Michael Smith, Craig Abbott, Charles Peppers, Marvin Blue, Kenneth Brooks, Richard Jackson, and Berry Packer ("Early Opt-ins"), attorneys' fees, settlement administration fees, and litigation costs. *See* Exhibit A – Settlement Agreement, § IV. This Gross Settlement Amount of $1,500,000.00 is the gross amount that Defendant will pay pursuant to the Settlement Agreement, and each of the approximately 727 members of the class and collective had the opportunity to participate in the settlement and receive a

settlement payment. Under the terms of this agreement, unclaimed settlement funds shall not revert back to Defendant. In return, the Settlement Agreement provides for the dismissal with prejudice of this action, as well as a release of state and/or local law wage and hour claims of the Rule 23 class, as well as the FLSA claims of those in the FLSA collective who choose to participate in the proposed settlement by joining the litigation or submitting a settlement claim form.

The Named and existing Opt-in Plaintiffs were not be required to send back a claim form to be considered Participating FLSA Collective and Rule 23 Settlement Class Members, as they have already opted into the case. *See* Dkt. 63-1, Ex. A, Art. I §§ 7, 21, 24; *see also* Dkt. 73.

The actual amount that each Participating Rule 23 Settlement Class Member and Participating FLSA Collective Member will receive will be determined pursuant to an allocation formula that reflects the relative value of their claims under Plaintiff's theory of the case, taking into account the time and compensation records that have been produced. Each Participating FLSA Collective Member and Participating Rule 23 Settlement Class Member who timely returned the claim form will be entitled to receive a share of the Net Settlement Amount, proportionate to their estimated actual damages as compared to the total estimated damages for the entire class. Specifically, funds will be allocated on a pro rata basis. *See* Dkt. 63-1, Ex. A, Art. IV § 2.

B.    <u>Eligible Employees</u>

The Settlement Agreement defines the classes of persons who were eligible to submit claims under this settlement as:

"FLSA Class," which corresponds to all current and former armored service technicians, including armed drivers, armed messengers, and armed guards, or persons in similar positions who worked for Loomis Armored US, LLC, in North Carolina at any time from October 1, 2015 through December 16, 2019, and who were not compensated at the appropriate one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week.

"NCWHA Class," which corresponds to all current and former armored service technicians, including armed drivers, armed messengers, and armed guards, or persons in similar positions, who worked for Loomis Armored US, LLC, in North Carolina at any time from October 1, 2016 through December 16, 2019, and who were not compensated at the appropriate one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week, and/or at any time within two (2) years prior to the date of commencement of the Action through the date of preliminary approval of the settlement, had amounts deducted from those wages for bulletproof vests or firearms.

See Dkt. 63-1, § IV(A) §§26, 30. (hereinafter "Settlement Classes"). The proposed Rule 23 Settlement Classes recognize the shorter two-year statute of limitations applicable to the state wage claims asserted pursuant to Rule 23.

C.    Releases

Upon approval by the Court, the Settlement Agreement shall bind the Named Plaintiff, Early Opt-Ins, Participating FLSA Collective Members, and Rule 23 Settlement Class Members to all terms set forth in the Settlement Agreement, regardless of whether any particular member of the Rule 23 Settlement Class timely submits a required claim form, or receives a Settlement Payment, described herein in Dkt. 63-1, Art. IV §§ (1)-(3), so long as such individual has not timely opted out of settlement pursuant to the opt-out procedures described in Dkt. 63-1, Art. V§(6) of the Settlement Agreement. *See id.*

9

However, Members of a Settlement Class who do not submit a claim form shall not waive their claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. *Id.*

    D.    <u>Tax Withholdings</u>

The parties agree that the Settlement Payment issued to Named Plaintiff, Early Opt-Ins, Participating FLSA Collective Members, and Participating Rule 23 Settlement Class Member pursuant to the Agreement shall be separated into two amounts: fifty percent (50%) shall be allocated to the claims asserted in the Litigation for unpaid wages and fifty percent (50%) shall be allocated to the claims asserted in the Litigation for liquidated damages and interest. Dkt. 63-1, Art. IV§ (5). The portion of each Settlement Payment allocated to claims of unpaid overtime and other wages will be subject to authorized or required deductions, employee-paid payroll tax withholdings required by law, garnishments, and tax liens. The portion of each Settlement Payment allocated to liquidated damages and interest shall be reported as non-wage income to the recipient. Named Plaintiffs' Service and Title VII Payments shall be reported as non-wage income to the recipient.

Angeion will report the portion of the Settlement Payment made to Named Plaintiff, Early Opt-Ins, Participating FLSA Collective Members, and Participating Rule 23 Settlement Class Members attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099. The Settlement Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions, mailing the settlement checks, Form W-2s, and Form 1099s to each individual. Dkt. 64-1, Art. IV§ (D)(2).

E. <u>Attorneys' Fees, Litigation Costs, and Service Award</u>

Class Counsel filed a Motion for Attorneys' Fees and Reimbursement of Expenses, in addition to a Motion for Approval of Service Awards, and the Court has indicated that at the scheduled April 8, 2020 fairness hearing it will determine whether and what amounts it will grant Plaintiff's motion for attorneys' fees and costs *See* Dkts. 64-65-1; 66-68; 69.[5] While Plaintiffs have sought fees as a percentage of the common fund, as is the norm in the Fourth Circuit, we note that if the Court is inclined to consider a lodestar cross-check, the lodestar now totals $526,501.25[6] in fees and $34,970.35[7] in litigation expenses, exclusive of any anticipated costs following the final fairness hearing.

F. <u>Settlement Claims Administrator</u>

The parties retained Angeion to administer the settlement. As stated, *supra*, the Court approved Angeion as the Parties' settlement administrator and authorized it to perform administrative duties outlined in its December 16, 2019 Order. Dkts. 69.

On December 31, 2019, Defendants' Counsel provided Angeion with a spreadsheet ("Class List") containing, among other things, the names and last known addresses for approximately 757 Class Members.

---

[5] Plaintiffs have also filed a supplemental declaration in support of their motion for attorneys' fees and costs. *See* Dkt. 78 - Supplemental Declaration of Gilda A. Hernandez.

[6] The Law Offices of Gilda A. Hernandez, PLLC - 1,263.1 (Hours) and $515,574.25 (Lodestar); Somers Schwartz P.C. – 33.70 (Hours) and $10,927.00 (Lodestar); **Total Lodestar for both firms combined is 1,296.8 Hours and $526,501.25 Lodestar.**

[7] This amount is exclusive of the Settlement Administrator's cost which is also coming from the Gross Maximum Settlement Fund. The Settlement Administrator's cost is $37,390.98. *See* Angeion's Declaration, Dkt. 77-1.

11

Angeion thereafter formatted the Notices so that they were personalized for each recipient. Angeion Decl. ¶ 7.   On January 22, 2020 (the "Notice Date"), Angeion sent Notices by both E-mail and by first class-mail, postage prepaid, from Philadelphia, Pennsylvania, to both FLSA and R.23 Settlement Class Members identified on the Class List.  Angeion Decl. ¶¶ 7, 10.   There were a total of 638 Settlement Class Members who were mailed the Notice packet and who had not previously opted into the collective and class action Settlement.  *See id.*   On February 21, 2020, Angeion mailed reminder postcards to each Class Member who had not yet submitted a Claim Form. *Id.* at ¶ 14.   The Settlement website went live on January 21, 2020*. Id.* at ¶ 16.

As of April 3, 2020, the USPS has returned four (4) Notice Packets as undeliverable with forwarding addresses.  *Id.* at ¶ 8.  Angeion re-mailed the Notice Packets to the forwarding addresses provided.  *Id.* at ¶ 4.   As of April 3, 2020, the USPS has returned fifty-eight (58) Notice Packets as undeliverable with no forwarding addresses.  *Id.* at ¶ 8. For Class members whose Notice Packets were returned as undeliverable with no forwarding addresses, Angeion conducted address verification searches (commonly referred to as "skip traces") in an attempt to locate updated addresses.  *Id.*   Angeion identified 37 updated addresses, and new Notice Packets were mailed using the corrected addresses.  *Id.*  The Notice also informed Class Members that the deadline to object to the Settlement was March 23, 2020.  As of April 3, 2020, Angeion has not received any written objections and has not been made aware of any objections to the Settlement.  *Id* at ¶ 19.

As of April 3, 2020, Angeion has received a total of approximately 357 (or 42% of total eligible Class Members) approved Claim Forms.  This includes the Early Opt-in

Plaintiffs who were not required to submit Claim Forms because they had already opted into the action during the August 15, 2019 distribution of notice and opportunity to send back their consent form. *See* Dkt. 44. Class Members are estimated to receive $777,662.38 of the Net Settlement Amount, not including service awards, with the average award being $2,178.33, with the highest payment of $13,415.57 and the lowest payment $50.00, in light of the Parties' Settlement Agreement that no unclaimed money will be returned to Defendant, but divided among eligible Class Members. *See* Ex. 1 (Dkt. 77-1), Angeion Decl. ¶ 21.

## IV. FINAL APPROVAL OF THE SETTLEMENT

### A. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects.

Named Plaintiff moves for final approval of the settlement described above. As this settlement is both procedurally and substantively fair and adequate, the Court should grant Plaintiff's Unopposed Motion.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine "the negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation and internal quotation marks omitted); *see Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (stating that Rule 23(e) "is intended primarily to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without

13

collusion"); *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (same). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable. *See Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019); *Berry*, 807 F.3d at 614; *In re Jiffy Lube Secs. Litig.*, 927 F3d at 158.

Courts within the Fourth Circuit favor compromise and settlement of class action suits. *Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sep. 26, 2016) (providing, in a hybrid FLSA and NCWHA action, that there is a "strong judicial policy in favor of settlements, particularly in the class action context.") (citations omitted); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018); *Velazquez v. Burch Equip., LLC*, 2016 U.S. Dist. LEXIS 29426, at *3 (E.D.N.C. Mar. 8, 2016) (same). Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a proposed class action settlement if the court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Because the settlement agreement reached in the instant case is both procedurally and substantively fair, the Court should grant Plaintiff's Motion for Final Approval.

B. The Proposed Settlement is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Matthews v. Cloud 10 Corp.*, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015); *Hood v. Uber Techs., Inc.*, No. 1:16-CV-998, 2019 WL 93546, at *5 (M.D.N.C. Jan. 3, 2019), *aff'd sub nom. Haskett v. Uber Techs., Inc.*, 780 Fed. Appx. 25 (4th Cir. 2019); *Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist.

LEXIS 86294, at *6 (E.D.N.C. June 30, 2016); *Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at *12 (D. Md. June 13, 2013); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011). Where negotiations are conducted at arms-length and in the presence of both counsel and an experienced mediator, there is a presumption that the settlement they achieved meets the requirements of due process. *See Matthews*, 2015 U.S. Dist. LEXIS 114586, at *4.

Here, the settlement was reached after Class Counsel conducted a thorough investigation, engaged in significant discovery pre and post conditional and class certification briefing, and the Court's ruling regarding the same, evaluating the claims and defenses, and after extensive arm's-length negotiations between the parties. *See* Dkt. 68 ¶¶ 22-24; 28-29. The parties participated in one full-day mediation session with an experienced employment mediator. *Id*. at ¶ 24. Over the two weeks following the final mediation, the parties continued to resolve outstanding issues. On September 18, 2019, the parties advised the Court that a settlement had been reached *See* Dkt. 55. Over the next two months, the parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement. *See* Dkt. 63-1. These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *Cf. Robinson*, 2016 U.S. Dist. LEXIS 86294, at *5-6 ("There is a presumption that no fraud

15

or collusion occurred between counsel, in the absence of any evidence to the contrary.")
(quotations omitted).

C. The Proposed Settlement is Substantively Fair

The Fourth Circuit evaluates the substantive fairness and adequacy of a class action settlement considering the factors from the seminal case of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See DeWitt v. Darlington Cnty, S.C.,* 2013 U.S. Dist. LEXIS 172624, at *9-10 (D.S.C. Dec. 6, 2013); *Stone*, 749 F. Supp. at 1423; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (citing *Grinnell* with approval). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.[8] Here, the balance of the *Grinnell* factors weighs

---

[8]Alternatively, courts in this circuit have considered factors separately grouped under "fairness" (the posture of the case, the extent of discovery conducted, the circumstances surrounding the negotiations, and the experience of counsel) and "adequacy" ((1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strength of the defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement). *Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp.2d 654, 665 (E.D. Va. 2001). Section IV(A) on procedural fairness addressed the third and fourth factors under

in favor of approval.

       1.     <u>Litigation Through Trial Would be Complex, Costly,</u>
               <u>and Long (Grinnell Factor 1)</u>

"Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *Stone*, 749 F. Supp. at 1423 (citations omitted); *see also Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *14 ("The complexity, expense, and duration of class action litigation are factors that support approval of a settlement."); *Vaughns v. Bd. of Educ.*, 18 F. Supp. 2d 569, 579 (D. Md. 1998).

This litigation is nearing two years, and the parties had already engaged in class-wide merits discovery involving written discovery from the parties, numerous depositions from both opt-in plaintiffs and corporate designees, and were preparing for dispositive motions, decertification motions, and trial. As summarized above, Plaintiff's motion for conditional and class action certification was filed, and the Court had granted Plaintiff's motion. *See supra* § II.B. It is reasonable to expect that the case will only become more contentious and complex as it enters dispositive motion, decertification, and trial preparation stages. Moreover, even post-trial, the ultimate result—regardless of which side prevails—will likely be the subject of an appeal and possible remand. In short, this litigation has already been long, complex, and costly and will only become more so as trial

---

"fairness," while the first two factors correspond to *Grinnell* factor 3. With respect to adequacy, factors 1 & 2 are encompassed by *Grinnell* 4-6 and 8-9; factor 3 is the same as *Grinnell* 1; factor 5 is the same as *Grinnell* 2; and factor 4 is the same as *Grinnell* 7. Thus, while the discussion is organized to correspond to the *Grinnell* factors, all *Jiffy Lube* factors are encompassed by the discussion as well.

approaches. This factor thus weighs in favor of final approval.

2. The Reaction of the Classes Has Been Positive (Grinnell Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citation omitted). The lack of class member objections weighs in favor of "the fairness of a settlement." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *19 (S.D.N.Y. May 1, 2008); *see also In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013).

Here, the Notices sent to Class Members included a personalized estimated settlement amount, described the claims they would be releasing as part of the settlement, and their right to object to or exclude themselves from the settlement, as well as an explanation of how to do so. *See* Ex. 1 (Dkt. 77-1), Angeion Decl. ¶¶ 7, 19, 20.[9] Zero Class Members have requested exclusion, and *none* have objected to the settlement. *Id.* This response weighs in favor of finding the settlement is fair.

3. Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)

"[C]ourts have a duty to ensure that the settlement does not 'come too early to be suspicious nor too late to be a waste of resources,' and that it is at 'a desirable point in the

---

[9] *See also* Exhibits to Angeion Declaration, A through D.

litigation to reach an agreement without further delay, expense, and litigation.'" *Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 212-13 (D.D.C. 2008) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 105 (D.D.C. 2004)). The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d 516, 537 (3d Cir. 2004); *see also Riddle v. City of Anderson*, 2015 U.S. Dist. LEXIS 192079, at *16 (D.S.C. Jan. 26, 2015) (finding that because both sides were fully aware of the factual issues, sufficient discovery had taken place). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citation and internal quotation marks omitted).

As stated *supra*, formal discovery had already commenced when the parties reached their proposed settlement. There had already been a substantial amount of written discovery in this case, and numerous discovery disputes ensued between the parties requiring multiple telephonic hearings. The Parties exchanged discovery; Plaintiff had deposed one corporate official, and Defendant had deposed Named Plaintiff and approximately nine (9) opt-in Plaintiffs; Defendants produced extensive payroll information for the putative Plaintiffs and Rule 23 class members following the Court's ruling on class certification and before mediation to allow for an evaluation of their claims and the calculation of damages. Plaintiffs' counsel also had the benefit of informal discovery from all of the opt-in Plaintiffs and Rule 23 class member(s). Further, Plaintiff

provided Defendant with a lengthy analysis of the law and evidence prior to the mediation, in addition to subsequent mediation briefs addressed to the mediator. This activity provided Plaintiffs and their counsel with a wealth of information, all of which has allowed them to adequately evaluate the strengths and weaknesses of their case. Counsel was thus in a strong position to negotiate a fair settlement and advise the Named Plaintiff of the advantages and disadvantages of litigating through trial. This factor thus weighs in favor of final approval.

    4.   <u>Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5)</u>

"In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted); *Brown v. Delhaize Am., LLC*, 2015 U.S. Dist. LEXIS 184265, at *5 (M.D.N.C. July 20, 2015) (same); *Riddle*, 2015 U.S. Dist. at *18 (same). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted). Notably, when considering the expense and delay inherent in prolonged litigation and possible appeals, settlement may be "an extremely viable alternative." *Riddle*, 2015 U.S. Dist. 192079, at *18. A court should consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted);

A trial on the merits would involve significant risks for Plaintiffs. The Plaintiffs will have to overcome probable attempts to defeat the FLSA collective and Rule 23 class certification. Although the Plaintiffs are confident that they could survive a motion for decertification, and prevail on both liability and damages, the Named Plaintiff and their counsel are also realistic and recognize the inherent risks. Even if Plaintiffs prevail, this victory could only be obtained after extensive briefing and argument of an uncertain duration, and the process of trial and appellate litigation is always full of uncertainty. These factors thus weigh very strongly in favor of final approval.

5.    Maintaining the Class Through Trial Would Not Be
      Simple (Grinnell Factor 6)

Plaintiffs are confident in their ability to maintain certification of the FLSA and Rule 23 classes. However, Plaintiffs and their counsel recognize that despite substantial briefing and argument, there will still be uncertainty, especially once more extensive discovery begins into potential individual variation, as provided above. *See Brown,* 2015 U.S. Dist. LEXIS 184265, at *5. This factor thus weighs in favor of approval.

6.    Defendants' Ability to Withstand a Greater Judgment is
      Not Determinative (Grinnell Factor 7)

There is no evidence here as to whether or not the Defendant could withstand a greater judgment. However, even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C.

September 26, 2017). Thus, given that all of the other *Grinnell* Factors weigh in favor of the proposed settlement, this factor should not be an obstacle to final approval.

7. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Approval of a class action settlement as reasonable under the relevant circumstances is within the sound discretion of the district court. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *Stone*, 139 F.R.D. at 339. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Based on Plaintiff's estimates and calculations of the probable amount of overtime and wage deductions that would be due to members of the FLSA and Rule 23 Settlement Classes if Plaintiffs were to prevail on all of their claims, $1.5 million is a reasonable settlement, particularly when factoring in the uncertainties of litigation. Specifically, Plaintiff's counsel analyzed the payroll data Defendant provided as part of the discovery

and mediation process and estimated that using Plaintiff's methodology for both the Participating FLSA Collective Members and Participating Rule 23 Settlement Class Members, that Settlement Class Members were entitled to approximately $2.5million in *actual* unpaid overtime and improper wage deductions using Defendant's payroll records to calculate damages.[10]  Defendants, on the other hand, disagree.  While Plaintiff insists that class members have not been paid for all of their overtime hours worked and illegal wage deductions were taken, Defendant insists that class members have been properly paid for all hours worked and no illegal wage deductions were taken.  If Defendant was to prevail on these issues at trial, Plaintiff's estimated damages would be reduced to an amount that is *substantially* less than the current settlement amount.  Given this risk to Named, Opt-ins, and Rule 23 class members, this settlement is beneficial in that it provides a guaranteed monetary recovery that is potentially more generous than if the parties litigated this issue, and the Court ruled in favor of Defendant.  Thus, the settlement amount here far exceeds the mere fraction of possible damages that has been approved in other cases in this Circuit.

* * *

Thus, because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'"  *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## V.    APPROVAL OF THE FLSA SETTLEMENT

---

[10] This amount excludes liquidated damages as there is no certainty that the Court would have granted liquidated damages as part of Plaintiff's dispositive motion briefing.

Plaintiff also requests that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. 2010). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See de la Cruz v. Chopra*, Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213, at *3 (D. Md. May 21, 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)) (stating FLSA settlement agreements should generally be accepted if it is fair and reasonable); *Lynn's Food Stores, Inc.*, 679 F.2d at 1353; *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *16. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *16. Because the Settlement Agreement resolves a *bona fide* dispute and was reached after

vigorous arm's-length settlement negotiations, it should be approved. Indeed, the Settlement satisfies the higher standard applicable to Rule 23 settlements, as discussed in section IV, *supra*, which should be conclusive in finding § 216(b) standards are satisfied.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final approval of the class settlement and the FLSA settlement.

Dated: April 7, 2020

Respectfully submitted,

BY: /s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

Charles Robert Ash, IV, *pro hac vice*
Matthew L. Turner, *pro hac vice*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, MI 48076
248-355-0300
248-746-4001 (fax)
crash@sommerspc.com
mturner@sommerspc.com

*Attorneys for Plaintiff*

25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 7 2020, I filed the foregoing true and accurate copy of

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE AND CLASS ACTION SETTLEMENT** with the Court using the CM/ECF system, and thereby electronically served the document to the following:

Jerry Howard Walters
jwalters@littler.com
**LITTLER MENDELSON, P.C.**
Bank of America Corporate Center
100 N. Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704-972-7013
Facsimile: 704-333-4005

Claire B. Deason**,** *pro hac vice*
Lyndsey Marcelino, *pro hac vice*
**LITTLER MENDELSON, P.C.**
80 South 8th Street, Suite 1300
Minneapolis, MN 55402
612-313-7610
612-630-6926 (fax)
cdeason@littler.com
lmarcelino@littler.com

*Attorneys for Defendant*

/s/ <i>Gilda Adriana Hernandez</i><br>
Gilda A. Hernandez (NCSB No. 36812)<br>
Charlotte Smith (NCSB No. 53616)<br>
<b>THE LAW OFFICES OF GILDA A.<br>
HERNANDEZ, PLLC</b><br>
1020 Southhill Drive, Suite 130<br>
Cary, NC 27513<br>
Tel: (919) 741-8693<br>
Fax: (919) 869-1853

26

ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

Charles Robert Ash, IV, *pro hac vice*
Matthew L. Turner, *pro hac vice*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, MI 48076
248-355-0300
248-746-4001 (fax)
crash@sommerspc.com
mturner@sommerspc.com

*Attorneys for Plaintiff*