UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00532-FDW-DSC

| SHAKEERA MYERS, on behalf of herself and all other similarly situated, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| LOOMIS ARMORED US, LLC, | ) ) | |
| Defendant. | ) ) ) | |

THIS MATTER is before the Court on the Unopposed Motion for Final Approval of the Collective and Class Action Settlement (Doc. No. 76). Also before the Court are the Unopposed Motion for Attorney Fees and Reimbursement of Expenses (Doc. No. 64) and the Unopposed Motion for Preliminary Approval of Service Awards (Doc. No. 66).

Plaintiff Shakeera Myers worked as an Armored Service Technician ("AST") for Defendant Loomis Armored US, LLC ("Defendant" or "Loomis"). She asserts claims on behalf of herself and all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., 216(b); and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq. Plaintiff claims that Defendant failed to pay its ASTs, including armed drivers, armed messengers, and armed guards, all wages owed, including overtime at a rate of one-and-one-half their regular rate of pay for work performed in excess of forty (40) hours per week. Plaintiff also alleges that Loomis allegedly maintained a corporate policy of deducting the costs of bulletproof vests and firearms from employees' wages, without obtaining the employees' prior written authorization as well as failing to pay employees all promised wages, including

1

compensation at a rate of one-and-one-half their regular rate of pay for work performed in excess of forty (40) hours per week. Defendant denies any liability or wrongdoing of any kind under the FLSA and NCWHA and pled various defenses.

In addition to extensive and meaningful discovery, this case has already involved extensive litigation over a variety of motions. While full, class-wide merits discovery was nearly complete with dispositive motion briefing underway along with trial preparation, the parties engaged in substantial negotiations and briefing prior to the grant of Plaintiff's Motion for Conditional Certification and Class Certification. (Doc. No. 26). Soon after Plaintiff's Motion was granted, (Doc. No. 37), the Parties participated in a mandatory mediation pursuant to the Court's order. Prior to mediation, Defendants provided to Plaintiffs the necessary time and payroll data for Plaintiffs to conduct a data analysis and calculate possible damages for Plaintiffs and other similarly situated individuals.

On September 16, 2019, the parties met with mediator Hunter Hughes III at his offices in Atlanta, Georgia, a nationally recognized class- and collective-action wage and hour mediator, who served as mediator by agreement of the Parties. At the mediation, the Parties reached an agreement in principle. After further negotiation, the Parties reached the Settlement Agreement described below on November 4, 2019. See generally (Doc. No. 63-1).

On November 4, 2019, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement consistent with the Parties' Stipulation and Settlement Agreement, to (1) grant preliminary approval of the proposed class and collective action settlement; (2) approve the appointment of Angeion Group as settlement administrator; and (3) approve the proposed notice of the settlement and claim forms. (Doc. No. 62).

On December 16, 2019, the Court preliminarily approved, subject to further consideration thereof at the Final Approval Hearing, (1) the Parties' Stipulation and Settlement Agreement; (2) the proposed Notices for mailing, consistent with the procedures outlined in the Parties' Stipulation and Settlement Agreement; and (3) the appointment of Angeion as the Settlement Administrator. See generally (Doc. No. 69).

Also, consistent with the Parties' Stipulation and Settlement Agreement, the Court set the deadline for members of the certified class to submit claim forms, opt out of the settlement, or submit an objection. Id. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court scheduled a fairness hearing for April 8, 2020 at 9:30 a.m., to determine whether the proposed Settlement Agreement is fair. Id.

Prior to distribution of notice to the class, the Parties discovered that the requisite Class Action Fairness Act ("CAFA") notices were not sent to the appropriate officials within 10 days of Plaintiff filing the proposed agreement with the Court, as set out in the agreement. Thus, on December 30, 2019, the Parties filed a Joint Motion to Mail Class Action Fairness Notice by January 9, 2020. (Doc. No. 70). The Court granted the motion the following day. (Doc. No. 71).

On January 14, 2020, the Parties filed a joint motion for extension of time to extend the notice period from January 15, 2020 to January 22, 2020, and clarification of three items related to the settlement notice process. See (Doc. No. 72). On January 15, 2020, the Court granted the Parties' joint motion. (Doc. No. 73).

Finally, Angeion was appointed to serve as the neutral, third-party Settlement Administrator in this case, (Doc. No. 69, p. 7), and consistent with the Parties' Settlement

Agreement, the Court ordered and authorized Angeion to perform the administrative duties outlined in its December 16, 2019 and January 15, 2020 Orders. (Docs. Nos. 69, 73).

Having considered the Plaintiffs' Unopposed Motion for Final Approval (Doc. No. 76), their Unopposed Motion for Attorneys' Fees and Reimbursement of Expenses (Doc. No. 64), their Unopposed Motion for Preliminary Approval of Service Awards (Doc. No. 66), and the supporting declarations, the oral argument presented at the fairness hearing, and the complete record in this action, for the reasons set forth therein and stated on the record at the April 8, 2020 fairness hearing, and for good cause shown,

IT IS THEREFORE ORDERED:

1. Plaintiffs' Unopposed Motion for Final Approval (Doc. No. 76) is GRANTED and finally approves the settlement as set forth in the Parties' Settlement Agreement, (Doc. No. 63-1, p. 2-61) ("Settlement Agreement").

**Procedural Fairness**

2. The proposed settlement is procedurally fair and was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. See West v. Cont'l Auto., Inc., No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) ("The Settlement was not hastily arrived at. Indeed, the Settlement followed lengthy discussions and considerable dialogue between the Parties, as well as arms-length negotiations involving extensive argument and counterargument."); Matthews v. Cloud 10 Corp., No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015); Saman v. LBDP, Inc., No. DKC 12-1083, 2013 WL 2949047, at *4 (D. Md. June 13, 2013); In re Dollar Gen. Stores Litig., 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011); see

also Toure v. Amerigroup Corp., No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation. . . . [and] enlisted the services of an experienced employment [law] mediator.").

3. Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in substantial discovery, motion practice, and reached a settlement after a mediation between the Parties. See generally (Docs. Nos. 26, 62, 63, 63-1).

4. On September 16, 2019, the Parties participated in a full-day mediation session with an experienced employment mediator. Over the next couple of months, the Parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement. See (Doc. No. 63-1, p. 2-61). These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. See Toure, 2012 WL 3240461, at *3. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. See West, 2018 WL 1146642, at *5 ("[T]here is no evidence in the record before the Court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the Parties or their attorneys in arriving at the terms of this Settlement.").

**Fair, Adequate, and Reasonable**

5. The settlement is substantively fair and meets all factors that illuminate this analysis. See Sharp Farms v. Speaks, 917 F.3d 276, 299 (4th Cir. 2019); Berry v. Schulman, 807 F.3d 600, 614 (4th Cir. 2015); In re Jiffy Lube Secs. Litig., 927 F.2d 155, 158-59 (4th Cir. 1991);

see also Detroit v. Grinnell Corp., 495 F.2d 448, 452 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).

6. The factors the Court considers are: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in FLSA class action litigation. See Berry, 807 F.3d at 614; Scardelletti v. Debarr, 43 F. App'x 525, 528 (4th Cir. 2002) (per curiam); In re Jiffy Lube Secs. Litig., 927 F.2d at 158-59; West, 2018 WL 1146642, at *4.

7. Litigation through trial would be complex, expensive, and uncertain. Thus, the posture of the case at the time the settlement was proposed weighs in favor of final approval.

8. The class members' reaction to the settlement was positive. The Notices sent to all Settlement Class Members included an explanation of their damages calculated pursuant to payroll and time records produced by Loomis and finalized on a pro-rata basis. The form of the Court-approved notice sent to the Rule 23 Settlement Class also informed such individuals of their right to object to or exclude themselves from the Settlement and explained how to do so. No Settlement Class Member objected to the proposed settlement, and zero requested exclusion. This favorable response demonstrates that the class approves the settlement, which further supports final approval. See, e.g., West, 2018 WL 1146642, at *6 ("No objections have been filed in this case. It is established that the absence of a larger number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (quotations omitted)); Deem v. Ames True Temper, Inc., No. 6:10-cv-01339, 2013 WL 2285972, at *2 (S.D. W.Va. May 23, 2013); In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

9. The Parties have completed voluminous discovery, even if informal, to recommend settlement. The proper question is whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." West, 2018 WL 1146642, at *4 (quotations omitted); see Riddle v. City of Anderson, No. 8:12-cv-03480-TMC, 2015 WL 12830369, at *6 (D.S.C. Jan. 26, 2015). They did. The parties engaged in extensive written discovery, conducted nearly ten (10) depositions between the parties, exchanged information during pre and post-certification discovery and in anticipation of mediation. Defendants produced payroll and time records for named, opt-in, and putative class members and plaintiffs. Class counsel have also had the benefit of informal discovery from all of the opt-in Plaintiffs and Rule 23 class members. Moreover, briefing on Plaintiffs' Motion for Conditional and Class Certification provided Plaintiffs and their counsel with a wealth of information, all of which allowed them to evaluate the strengths and weaknesses of their case. Thus, the second factor weighs in favor of final approval.

10. "In complex, multi-year class actions, the risks inherent in the litigation are immense . . . ." In re MI Windows & Doors Prods. Liab. Litig., 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (quotation omitted). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." In re MI Windows and Doors Prods. Liab. Litig., 2015 WL 12850547, at *12 (D.S.C. July 22, 2015) (quotation omitted). Plaintiffs have to overcome probable attempts to decertify the FLSA collective action and certification of the Rule 23 Classes. As other cases predicated on similar theories of liability suggest, this threat is real. Moreover, Plaintiffs would still have to overcome Defendants' arguments regarding Plaintiffs' claims, because as they

7

maintain, Plaintiffs, opt-ins, and Rule 23 class members have been properly paid and were not susceptible to illegal deductions. Thus, the second and third factors weigh in favor of final approval.

11. There is no evidence whether Defendant could withstand a greater judgment. However, even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (alteration in original) (quotation omitted); see In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000). Thus, given that all of the factors weigh in favor of the proposed settlement, this factor is not an obstacle to final approval.

12. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is adequate and reasonable "does not involve the use of a mathematical equation yielding a particularized sum." Frank, 228 F.R.D. at 186 (quotation omitted). The Court considers:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

Sharp Farms, 917 F.3d at 299 (quotation omitted); In re Jiffy Lube Secs. Litig., 927 F.2d at 159; West, 2018 WL 1146642, at *4. The first two factors are the most important. See Sharp Farms, 917 F.3d at 299. As discussed, the Settlement Agreement meets these factors.

8

**Approval of the FLSA and Rule 23 Settlement**

13. For settlement purposes only, the Settlement Classes are finally certified pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

14. The Court hereby approves the FLSA collective Action settlement.

15. Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA releases. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); McMahon v. Olivier Cheng Catering & Events, LLC, 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 3, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement. Lynn's Food Stores, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. Id. at 1354; McMahon, 2010 U.S. Dist. LEXIS 18913, at *16.

16. Here, the settlement was the result of a formal mediation involving arm's-length settlement negotiations. See (Doc. No. 63; Doc. No. 69, p. 2). During the entire process, plaintiffs and defendants were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves an actual dispute under the circumstances supporting a finding that is fair and reasonable.

17. The Court hereby approves the Rule 23 class action settlement.

18. Courts generally approve Rule 23 class action settlements when they are fair, reasonable, and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. After due consideration and inquiry into the circumstances surrounding the proposed settlement of

Plaintiffs' collective FLSA claims and Rule 23 class claims under the NCWHA against Defendant, and review of the Settlement Agreement, the Court finds and concludes that the proposed settlement in this case meets the standard for approval as it reflects a reasonable compromise of a *bona fide* dispute. The Court finds and concludes that the proposed settlement is just and reasonable and in the best interest of the Parties. The Court further finds the settlement to have been reached in good faith. The Court further finds that the Parties' Settlement Agreement is fair, reasonable, and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. The Court finds that the approved class representative, Named Plaintiff Shakeera Myers, and Class Counsel have adequately represented the class and that the settlement proposal was negotiated at arm's length. The Court further finds that the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of the proposed award of attorneys' fees, including timing of payment; and (iv) the Parties' Settlement Agreement. The Court also finds that the settlement proposal treats class members equitably relative to each other. See Fed. R. Civ. P. 23(e)(2)(A)-(D).

**Dissemination of Notice**

19. Pursuant to the Court's Order preliminarily approving the Parties' settlement, (Doc. No. 69) and its Order dated January 15, 2020, (Doc. No. 73), all Rule 23 Settlement Class Members and Putative FLSA Collective Members of the Settlement Agreement were sent court-approved notices by first class mail at his or her last known address.

20. The Notices and reminder postcards fairly and adequately advised Rule 23 Settlement Class Members and Putative FLSA Collective Members of the terms of the settlement,

as well as the right of Rule 23 Settlement Class Members to opt-out of or to object to the settlement, and to appear at the fairness hearing conducted on April 8, 2020. Rule 23 Settlement Class Members and Putative FLSA Collective Members were provided with the best notice practicable under the circumstances.

21. The Notices and their distribution met with all constitutional requirements, including due process.

**Award of Fees and Costs to Class Counsel and Service Awards to Plaintiff and Early Opt-Ins**

22. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $500,000.00, which is one-third of the Gross Maximum Settlement Amount in accordance with the terms of the Settlement Agreement, less the amount of additional administration costs incurred by the Settlement Administrator, which are $11,949.98. (Doc. No. 77-1, p. 8). Thus, the total amount to be awarded as attorneys' fees is $488,050.02.

23. Class Counsel's request for one-third of the Gross Maximum Settlement Amount is reasonable. See Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (articulating factors to consider in analyzing whether a request for attorneys' fees in class action litigation is reasonable); In re Outer Banks Power Outage Litig., No. 4:17-CV-141-D, 2018 U.S. Dist. LEXIS 161714, at *8 (E.D.N.C. Sept. 21, 2018) (collecting cases); Hall v. Higher One Machines, Inc., No. 5-15-CV-670-F, 2016 WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016); Phillips v. Triad Guar., Inc., No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016); Ferris v. Sprint Commc'ns Co., No. 5:11-cv-667-H, 2012 WL 12914716, at *3-4 (E.D.N.C. Dec. 13, 2012); In re The Mills Corp., Secs. Litig., 265 F.R.D. 246, 261, 264 (E.D. Va. 2009); Jones v. Dominion Res.

Servs., 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); see also Hess v. Sprint Commc'ns Co. L.P., 2012 U.S. Dist. LEXIS 168963, at *6 (N.D.W. Va. Nov. 26, 2012).

24. In applying the common fund method, the Supreme Court and Circuit Courts across the country have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendant. See Boeing Co. v. Van Gemert, 444 U.S. 472, 481-82 (1980); Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437 (2d Cir. 2007); Waters v. International Precious Metals Corp., 190 F.3d. 1291, 1296-97 (11th Cir. 1999). Here, however, no such unclaimed funds will revert back to Defendant. Any unclaimed funds will be divided on a pro-rata basis among those Class Members who participate in the action.

25. No Class Member objected to Class Counsel's request for one-third of the fund, which also provides support for Class Counsel's fee request. See, e.g., In re Outer Banks Power Outage Litig., 2018 U.S. Dist. LEXIS 161714, at *9. The Court is concerned the additional settlement costs of $11,949.98, which would otherwise come out of the Plaintiffs' share of the Gross Maximum Settlement Amount, may have led to an objection. In any event, venturing a guess at past predictions would be an exercise in futility. Assessing the increased cost against the attorneys' fees results in a fee percentage of 32.54 percent of the Gross Maximum Settlement Amount—a percentage that is still reasonable in light of the foregoing caselaw.

26. Additionally, Class Counsel's request for one-third of the proposed Settlement Fund – $500,000 – is less than their calculated "lodestar." As such, a lodestar multiplier is not necessary. Lodestar multipliers of less than 2, as is the case here, have been found to be "modest"

in the Fourth Circuit, further supporting Class Counsel's requested award. Smith v. Krispy Kreme Doughnut Corp., No. 1:05CV00187, 2007 WL 119157, at *1–3 (M.D.N.C. Jan. 10, 2007) (approving a "modest" multiplier of 1.6); see also Kirkpatrick v. Cardinal Innovations Healthcare Sols., 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (finding a multiplier of 1.8 "well within the normal range of lodestar multipliers" (quotation omitted)); Kruger v. Novant Health, Inc., No. 1:14CV208, 2016 WL 6769066, at *4–5 (M.D.N.C. Sept. 29, 2016) (approving a one-third fee of 3.69 times the lodestar).

27. The Court also awards Class Counsel reimbursement of $35,000.00 in litigation costs or expenses in addition to fees in accordance with the terms of the Settlement Agreement.

28. The attorneys' fees and the amount in reimbursement of costs and expenses, including but not limited to costs of administration, shall be paid from the Gross Maximum Settlement Amount in accordance with the terms of the Settlement Agreement.

29. The Court finds reasonable an award for Named Plaintiff Shakeera Myers in the amount of $50,000 for settlement of her Title VII claims and $20,000 for her service award as Named Plaintiff/Class Representative for the asserted FLSA/Rule 23 collective/class wage and hour claims; $12,500 for opt-in Plaintiff Trevon Conyers for his service award as the first early opt-in plaintiff and due to his cooperation and participation in discovery, pre-certification deposition, and preparing a declaration for conditional certification; $5,000 each as service awards for opt-in Plaintiffs Craig Abbott, Michael Smith, Shamekia Butler, and Charles Peppers (due to their early cooperation and participation in discovery, depositions, providing declarations, documents, and information in furtherance of mediation); $4,000 as a service award for opt-in Plaintiff Marvin Blue for his cooperation and participation in discovery and sitting for a deposition;

$3,000 as a service award for Kenneth Brooks for his cooperation and participation in discovery and making himself available for a deposition; and $2,500 each as service awards for Richard Jackson and Berry Packer for their cooperation and participation in discovery. These amounts shall be paid from the Gross Maximum Settlement Amount in accordance with the terms of the Settlement Agreement.

30. Consistent with the terms of the Settlement Agreement, the "Effective Date" of the settlement shall be as defined in the Settlement Agreement. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

### Settlement Administrator

31. The Court confirms its prior Order appointing Angeion Group ("Angeion") as the Settlement Administrator in this case, (Doc. No. 69), and the duties Angeion was previously ordered to perform therein in conjunction with any order granting final approval to the Settlement in this action.

32. Consistent with the Court's prior Order appointing Angeion as Settlement Administrator, Angeion shall determine the total amount of its services and expenses in connection with the administration of the settlement in this action prior to the distribution of any amounts form the Qualified Settlement Fund it established in connection with this Settlement.

33. Within fifteen (15) days after the Effective Date as defined in the Settlement Agreement, the Settlement Administrator will establish and maintain a qualifying designated settlement fund pursuant to Section 468(B) of the Internal Revenue Code ("Qualified Settlement Fund" or "QSF") in accordance with the terms of the Settlement Agreement.

34. Within thirty (30) days after the Effective Date as defined in the Settlement Agreement, Defendant shall remit the Gross Maximum Settlement Amount of $1,500,000.00 to the Settlement Administrator to fund the Qualified Settlement Fund in accordance with the terms of the Settlement Agreement.

35. Within five (5) business days after Defendant remits the Gross Maximum Settlement Amount to the Settlement Administrator to fund the QSF, the Administrator will issue the Service Awards to Plaintiffs and the Class Counsel's Fees and Expenses by making the following payments in accordance with the terms of the Settlement Agreement:

- Paying Class Counsel one-third of the Gross Maximum Settlement Amount ($500,000.00); Reimbursing Class Counsel for $35,000.00 in litigation costs and expenses in accordance with the terms of the Settlement Agreement; and
- Paying the service awards in the amounts as detailed above, which cumulatively total $114,500.00, in accordance with the terms of the Settlement Agreement.

36. Within twenty-one (21) days after Defendant remits the Gross Maximum Settlement Amount to the Settlement Administrator to fund the QSF, or as soon thereafter as practicable, the Settlement Administrator will issue payment of the Individual Settlement Amounts to the Participating FLSA Collective Members and Participating Rule 23 Settlement Class Members, provided they did not opt out or exclude themselves from the Settlement, along with a letter approved by Class Counsel and Defense Counsel explaining that the Settlement has received final approval and the claims are released by the recipient, along with the URL for a website where the recipient can access a copy of the order granting final approval in accordance with the terms of the Settlement Agreement.

37. The Settlement Administrator shall be entitled to payment from the Gross Maximum Settlement Amount, for all reasonable costs associated with the Settlement Administrator's work under this Settlement Agreement. Pursuant to the terms of the Settlement Agreement, in the event the reasonable costs of the Settlement Administrator exceed $25,441.00, the Settlement Administrator shall file a declaration with the Court explaining the basis for the costs above the $25,441.00. Since the reasonable costs of the Settlement Administrator exceeded this amount, the Settlement Administrator filed a declaration with the Court explaining the basis for the costs above the $25,441.00. Upon review, the Court approves reasonable costs of the Settlement Administrator in the total amount of $37,390.98 (i.e., $11,949.98 above the $25,441.00 amount). This additional cost, as discussed above, shall be taken out of the award for attorneys' fees rather than Plaintiffs' share of the Gross Maximum Settlement Amount.

38. Upon the Effective Date, all Rule 23 Settlement Class Members who did not timely exclude themselves from the Settlement, all Opt-in Plaintiffs, and the Named Plaintiff shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the terms of the Settlement Agreement.

39. In accordance with the terms of the Settlement Agreement, upon the Effective Date, Named Plaintiff Shakeera Myers and Early Opt-ins Trevon Conyers, Craig Abbott, Marvin Blue, Kenneth Brooks, Shamekia Butler, Richard Jackson, Berry Packer, Charles Peppers, and Michael Smith, on behalf of themselves, their heirs, trustees, executors, successors, administrators, assigns, and representatives, shall and do hereby forever release, discharge and agree to hold harmless the Defendant Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands,

costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, and whether arising under federal, state, or other applicable law, which they may have against Defendant arising out of, related to, or in any way connected with, their employment with Defendant, including but not limited to the Released Claims and their claims arising under the FLSA and the NCWHA, as well as any other claim arising out of any and all transactions, occurrences, or matters between Named Plaintiff and/or Early Opt-Ins Trevon Conyers, Craig Abbott, Marvin Blue, Kenneth Brooks, Shamekia Butler, Richard Jackson, Berry Packer, Charles Peppers, and/or Michael Smith and Defendant Releasees through the Effective Date, except as prohibited by law. See (Doc. No. 63-1, p. 44-47 (Section VI-1)).

As further explained by the Settlement Agreement, without limiting the generality of the foregoing, the claims released by both Named Plaintiff and the Early Opt-ins:

> shall include, but not be limited to, any and all claims under the (a) Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., as amended; (b) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended; (c) the Civil Rights Act of 1991; (d) 42U.S.C. § 1981, as amended; (e) the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act, 29 U.S.C. § 621, et seq.; (f) the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., as amended; (g) the Equal Pay Act of 1963, as amended; (h) the Employee Retirement Income Security Act, as amended; (i) the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 et seq.; (j) the Rehabilitation Act of 1973, as amended; (k) the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, et seq.; (l) the National Labor Relations Act, 29 U.S.C. § 151, et seq.; (m) the Workers Adjustment and Retraining Notification Act (WARN), 29 USC § 2100 et. seq., as amended; (n) the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, et seq.; (o) North Carolina Persons With Disabilities Protection Act, N.C. Gen. Stat. § 168A-1, et seq.; (p) Retaliatory Employment Discrimination Act (REDA) N.C. Gen. Stat. § 95-240, et seq.; and (q) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds, as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws. This release

is for any and all legal, equitable and/or other relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, bonuses, compensatory damages, tortious damages, liquidated damages, punitive damages, damages for pain and suffering, and attorney fees and costs, and the Named Plaintiff and Early Opt-ins hereby forever release, discharge, and agree to indemnify and hold harmless the Defendant Releasees from any and all claims for attorney fees, costs, and expenses arising out of the matters released in this Settlement Agreement.

Named Plaintiff and Early Opt-ins also agree that, to the extent permitted by law, if a claim is prosecuted in their name against one of the Defendant Releasees before any court or administrative agency, they waive, and agree not to take, any award of money or other damages from such proceeding. Named Plaintiff and Early Opt-ins agree that, unless otherwise compelled by law, if a claim is prosecuted in any of their names against one of the Defendant Releasees that they will immediately request in writing that the claim on their behalf be withdrawn.

Id. at 45-46.

40. In accordance with the terms of the Settlement Agreement, each and every Rule 23 Settlement Class Member and Participating FLSA Collective Member, on behalf of themselves, their heirs, trustees, executors, successors, administrators, assigns, and representatives, shall and do hereby forever release, discharge and agree to hold harmless the Defendant Releasees of and from any and all Released Claims that any Rule 23 Settlement Class Member and/or Participating FLSA Collective Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever relating to the payment of wages, including, but not limited to, all claims under the North Carolina Wage and Hour Act and the FLSA, up to and including the date of the Court's final approval of the Settlement. Rule 23 Settlement Class Members who do nothing upon receipt of the Claim Form will not receive any monetary award available to them under the Settlement, but they will release any claims they have under the North Carolina Wage and Hour Act. Otherwise, those who do not release FLSA claims either by having filed a consent to join suit as

party plaintiff or by submitting a timely and valid Claim Form to the Settlement Administrator, preserve such FLSA claims.  See (Doc. No. 63-1, p. 47-49 (Section VI-2)).

41. Pursuant to the terms of the Settlement Agreement, the Named Plaintiff, all Opt-in Plaintiffs, and all Rule 23 Settlement Class Members who did not timely request exclusion are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendants, and are enjoined from pursuing any claim released as part of this settlement, (Doc. No. 63-1, p. 44-49 (Sections VI-1, 2, and 3)), with the exception that for those Rule 23 Settlement Class Members who did not opt into the FLSA action, their FLSA claims are preserved.  The Court retains jurisdiction over this action and the Parties for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds.  The Parties shall abide by all terms of the Settlement Agreement, (Doc. No. 63-1, p. 2-61), which are incorporated herein, and this Order.

42. Named Plaintiff's, Early Opt-ins', all of the Rule 23 Settlement Class Members', and all of the Participating FLSA Collective Members' released claims (including unknown claims) are hereby discharged with prejudice as to Named Plaintiff, Early Opt-ins, all of the Rule 23 Settlement Class Members, and all of the Participating FLSA Collective Members.  Named Plaintiff, Early Opt-ins, all of the Rule 23 Settlement Class Members, and all of the Participating FLSA Collective Members are barred and permanently enjoined from prosecuting, commencing or continuing any and all released claims.

43. The Court directs the settlement funds be distributed in accordance with the terms of the Settlement Agreement.

44. The Court hereby directs the entry of final judgment in this case and dismisses this action with prejudice in its entirety in accordance with the terms of the Settlement Agreement. The Clerk of Court is respectfully DIRECTED to enter Final Judgment in this action adjudicating all the claims and all the Parties' rights and liabilities pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## **Conclusion**

For the foregoing reasons, the Unopposed Motion for Final Approval of the Collective and Class Action Settlement (Doc. No. 76) is GRANTED; the Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses (Doc. No. 64) is GRANTED WITH MODIFICATION; and, given its preliminary nature, the Unopposed Motion for Preliminary Approval of Service Awards (Doc. No. 66) is DENIED AS MOOT. This denial has no effect whatsoever on the validity or award of the service awards under the Settlement Agreement as discussed herein.

The Clerk of Court is respectfully DIRECTED to enter final judgment and close the case.

IT IS SO ORDERED.

Signed: April 8, 2020

Frank D. Whitney
Chief United States District Judge